THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TOMMY E. WHITE, Defendant-Appellant.

Second District   No. 83—740

Opinion filed December 10, 1984.

G. Joseph Weller, Paul J. Glaser, and John R. Wimmer, all of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Tommy E. White, was charged with two counts of theft and one count of burglary in the circuit court of Kane County. All three charges were joined for trial. A jury convicted the defendant of burglary and theft of property under $300 and acquitted him of theft over $300. The trial court sentenced defendant to concurrent terms of probation, three years for burglary, and one year for theft under $300, both sentences of probation, including concurrent six-month jail sentences, to be served at the beginning of the probationary period.

Defendant appeals raising these three issues: (1) whether the charge of burglary was improperly joined for trial with the theft charges; (2) whether the trial court abused its discretion in denying the defendant's motion *in limine* regarding evidence of his prior conviction for purposes of impeachment; (3) whether the jury was im-

properly instructed concerning evidence of statements of the defendant.

The defendant was charged by information with the January 19, 1982, theft of over $300 worth of shock absorbers from the Merlin Muffler Shop in Elgin (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)(1)), with the August 26 or 27 burglary thereof (Ill. Rev. Stat. 1981, ch. 38, par. 19—1), and by complaint with the October 25 theft from the shop of one pair of shock absorbers valued at less than $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)(1)).

Shortly before 10 p.m. on October 25, 1982, Elgin police officer Redden and his partner were in the area of the Merlin Muffler Shop when they noticed a man standing between two commercial buildings, and saw another man sitting behind the steering wheel of a green Dodge parked near the front door of the business. The two men were asked for identification; the defendant was the man in the car, the one who had been standing between the buildings was Lloyd Johnson, the defendant's brother-in-law. Defendant explained Johnson had to urinate and that was why he was standing between the buildings. Both men were allowed to depart. Officer Redden later returned to the area where Johnson had been standing, and found on the ground a muffler box inside of which was a box of brand new shock absorbers.

The next morning Officer Redden contacted the defendant at the Merlin Muffler Shop where he worked and asked him to come to the police department to answer some questions. Officers Redden and Kline testified they interviewed the defendant after advising him of his rights, and that he stated he knew someone who was looking for a set of air shock absorbers and the reason he took the shocks from the store was because he needed money for "some food and stuff for his family." The defendant said Johnson dropped the box the night before when he saw the officers. Officer Redden testified the defendant related, "Usually they insert *** a new air shock box *** inside an old used muffler box, bring it outside and put it in the dumpster during business hours. After the store closes they wait and come back, check, make sure nobody is around the building, take the muffler box with the shock absorber inside the box, bring it out and put it in his truck."

Officer Kline testified that at the same interview the defendant also admitted his involvement in the felony theft of some shock absorbers from the Merlin Muffler Shop on January 19, 1982. According to Kline, the defendant stated he removed several sets of shock absorbers and put them into a garbage can at the rear of the shop. He

later contacted Johnson, who drove to the shop in the defendant's car and retrieved the shock absorbers. They were later sold and the money split. Kline testified the defendant denied any involvement in the August burglary of the premises at this initial interview, but did admit to such involvement at a later interview that same day. According to Kline's testimony, the defendant stated that on August 26, 1982, he went to apartment 3-C at the Watch Court apartment complex and met with Archie, Willie, and Lloyd Johnson. The four men talked about ways to make money, and decided to go to the Merlin Muffler Shop and break into the business. They drove to the shop in the defendant's car, where he broke out a window on the rear overhead door, opened the door and let in the others. This testimony of Officer Kline concerning the events of the August burglary was consistent with the officer's prior testimony at the preliminary hearing, but differed from his suppression hearing testimony. There, he testified the defendant told him "they" had left a side door unlocked and that he had kicked out a window at the back of the business to make it appear that a burglary had occurred. Continuing with Kline's trial testimony, he stated the defendant told him that once inside, the four men removed a quantity of shock absorbers, which they put into his car. He then shut the overhead door, and they drove to 513 Jefferson where they unloaded the shock absorbers. The next day the Johnsons retrieved the stolen items and sold them.

Elgin police officer Keeney testified that in the early morning hours of August 27, 1982, he was called to the Merlin Muffler Shop and observed that a window in an overhead garage door at the rear or west side of the building had been broken out. Keeney also observed that a "normal entrance door" for pedestrians on the south side of the building was standing slightly open.

Two other witnesses who testified for the State were Ron De-Rueda, the local district manager for Merlin Muffler, and Charles Davis Hamilton, the shop manager. Hamilton testified concerning his method of inventory control, which enabled him to determine that 15 pairs of air shock absorbers which retailed then at $99.95 each were missing from the shop on January 20, 1982. When he arrived at work on that date, he found a muffler box outside the shop which contained a pair of VT shocks, which are the heavy-duty shock absorbers made for vans or trucks. The deficiency was noted after comparison of actual inventory on hand and the control cards kept by Hamilton. Hamilton also testified that when he arrived at work on August 27 he found a rock lying in the middle of the floor. A window of the overhead door at the back of the building had been broken out, and it ap-

peared that the rock had been thrown from the outside into the shop. Fifteen pairs of air shock absorbers were determined to have been taken from the shop on that occasion also. Hamilton testified that the defendant was employed at Merlin Muffler when both of these incidents occurred. Further, Hamilton testified that no one had been given permission to take the merchandise which was determined to be missing, and that in January and August there were two other employees besides himself and the defendant who worked at the shop.

Ron DeRueda testified Merlin Mufflers, Inc., is a corporation licensed to do business in Illinois and, on cross-examination, he admitted he verified the original information filed against the defendant for the theft of 24 pairs of shock absorbers rather than 15. The number "24" had been arrived at prior to the taking of an official physical inventory. He also admitted past quarterly physical inventories of the shop have at times revealed shortages.

Before the defendant testified, he renewed his pretrial motion *in limine* to preclude the State from cross-examining him as to the nature of his felony conviction in 1980. He planned to include in his own testimony that he pled guilty to a felony within the last 10 years, but argued that reference to the specific felony, involuntary manslaughter, during cross-examination would be more prejudicial than probative, and should be prohibited. The trial court denied the motion.

The defendant testified he was 30 years old and engaged to be married. During the last 10 years, he was charged with and had pleaded guilty to involuntary manslaughter. In January through October 1982, he was employed at Merlin Muffler Shop, and prior to that time he had worked there on and off for four years and was manager from September 1979 to September 1980. He worked elsewhere for a year and then returned to Merlin. He was assistant manager of the shop and an installer of auto parts prior to his dismissal on October 26, 1982, when he was caught trying to steal a pair of shock absorbers. Although he admitted he tried to steal the shock absorbers on that occasion in order "to feed [his] future family," he denied he admitted to the police that he was involved in either the January felony theft or the August burglary.

He testified that in February 1982, he observed the shop's semi-weekly janitor, Jeff Manu (spelled phonetically in the record), preparing to leave work with a shopping cart. The manager, Hamilton, found two pairs of VT shock absorbers in the cart. Manu continued to work at the shop, however, and no charges were brought against him. The defendant stated he told the police concerning the January theft that there had been more than one incident of shock absorbers being

removed from the shop, and that a lot of people used to hang around the shop. With regard to the August burglary, he testified he did not know who did it, but stated some of his tools had been taken at that time also. He further testified he told the police he would have no reason to burglarize the shop since he worked there every day.

As noted, the jury found him not guilty of the January felony theft, but guilty of the October misdemeanor theft and the August burglary.

## SEVERANCE

The defendant contends the burglary offense was a separate and distinct offense from the two theft offenses, and that joinder of the charges for trial over his timely objection deprived him of a fair trial. He posits that because the jury called upon to decide his guilt or innocence of burglary was informed of evidence of the other, unrelated theft offenses, he urges his conviction for burglary should be reversed and the cause remanded for a new trial.

The State argues there were ample similarities between the offenses so as to render them one comprehensive transaction. Thus, it argues the offenses were properly joined for trial.

The joinder of related prosecutions is governed by section 114—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—7). It provides:

> "The court may order 2 or more charges to be tried together if the offenses and the defendants could have been joined in a single charge. The procedure shall be the same as if the prosecution were under a single charge."

Section 111—4(a) of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 111—4(a)) provides there may be joinder of offenses in a single charge in a separate count for each offense:

> "if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction."

Conversely, section 114—8 of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 114—8) provides:

> "If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge *or by joinder of separate charges* or defendants *for trial* the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require." (Emphasis added.)

After the trial court granted the State's request to proceed on all

the offenses at one time, the defendant moved that the burglary and theft charges be severed for trial to avoid causing him prejudice. He argues his ability to testify or not as to the statements allegedly made by him in reference to each of the offenses would be prejudiced by a joint trial. Further, he argued the facts concerning the commission of the offenses do not amount to a "signature" from which the jury could reasonably infer perpetration of the offenses by him based on an identity of *modus operandi.*

The State argued that proof of the offenses would involve "much of the same witnesses and evidence"; the items stolen were taken from the same business and the unlawful entry was in the building owned by the same victim; and there was a common codefendant whom the State "may or may not want to call to testify." The prosecutor argued:

"[E]vidence of *** the Defendant making—or doing these transactions is part of a—certainly would indicate a common plan or a scheme to—to steal similar items from this particular business, because, apparently, it worked once, he had a chance to do it again, and this is exactly what happened."

Although acknowledging the burglary occurred six or seven months after the felony theft, the prosecutor argued it nonetheless evidenced a continuing comprehensive transaction because it involved the same business, the same type of automotive item, and same motivation, and the *modus operandi* "was quite similar." Defense counsel retorted that joinder of the charges for trial was not related to any similarity in *modus operandi*; rather, it was an attempt "to create the inference that in fact if [the defendant] is charged with three of these things from the same shop [where] he was the employee, then in fact he must be doing them."

Based on our review of the record, we conclude the trial court did not abuse its discretion in denying severance of the theft and burglary charges for trial.

■■ ■ Illinois cases which preceded enactment of section 111—4 of the Code established the rule that a defendant cannot, over his properly made objection, be placed on trial under an indictment charging separate offenses when it affirmatively appears they are not part of one and the same transaction, but are separate and distinct both in law and fact (*People v. Fleming* (1970), 121 Ill. App. 2d 97, 102), nor may a defendant be forced to trial under indictments charging disassociated felonies. (*People v. Benka* (1983), 117 Ill. App. 3d 221, 223; *People v. Woods* (1961), 23 Ill. 2d 471.) Although it has been stated that joinder is not permitted when the charges are unrelated,

where the crimes occur several days apart, or where there is no concerted plan of action or scheme that would link two felonious acts (*People v. Daniels* (1976), 35 Ill. App. 3d 791), the "better view" has been held to be that the time involved does not automatically eliminate the several acts from the category of a comprehensive transaction. *People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1073, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256, citing with approval *People v. Hyche* (1978), 63 Ill. App. 3d 575, 578.

■ The consolidation of separately charged offenses for a single jury trial rests within the sound discretion of the trial court (*People v. Higgins* (1979), 71 Ill. App. 3d 912), as does the decision whether to sever charges for trial. (*People v. Bradley* (1979), 73 Ill. App. 3d 347, 351.) The discretion to be exercised is not arbitrary discretion (*People v. Meisenhelter* (1942), 381 Ill. 378, 384), but judicial discretion, exercised so as to prevent injustice. (*People v. Patris* (1935), 360 Ill. 596, 601.) No precise test has emerged for determining whether separate offenses are part of the same "comprehensive transaction," and each case turns largely upon the facts presented. (*People v. Sockwell* (1977), 55 Ill. App. 3d 174, 175.) The trial court is clothed with substantial discretion in ruling on a motion to sever (*People v. Peterson* (1982), 108 Ill. App. 3d 856, 860), and absent an abuse of discretion, the trial court's judgment whether to sever or not will not be reversed. *People v. Reynolds* (1983), 116 Ill. App. 3d 328, 335; *People v. Mikel* (1979), 73 Ill. App. 3d 21, 27.

■ The critical question is whether the defendant's two or more acts were part of "the same comprehensive transaction" (*People v. Bricker* (1974), 23 Ill. App. 3d 394; *People v. Petitjean* (1972), 7 Ill. App. 3d 231); if they are not, the trial court abuses its discretion in not granting the motion for severance. (*People v. Bricker* (1974), 23 Ill. App. 3d 394, 396.) Important factors to be considered by the trial court in determining whether to sever charges for trial include the proximity of time and location of the various charges and the identity of evidence which would be presented to prove each charge. *People v. Mikel* (1979), 73 Ill. App. 3d 21, 27. Accord, *People v. Freeland* (1981), 103 Ill. App. 3d 94, 98.

The term "comprehensive" is defined variously as an adjective meaning "dealing with all or many of the relevant details; including much; inclusive" (Webster's New World Dictionary 292 (2d ed. 1972)); or as meaning "of large scope; covering or involving much; inclusive" (Random House Dictionary of the English Language 302 (1967)). "Same," of course, is commonly understood to mean "being one or identical though having different names, aspects, etc.; agreeing in

kind, amount, etc., corresponding." (The Random House Dictionary of the English Language 1264 (1967).) "Same in one sense implies that what is referred to is one thing and not two or more distinct things and, in another sense, implies reference to things that are really distinct, but without any significant difference in kind, appearance, amount, etc. Webster's New World Dictionary 1258-59 (2d ed. 1972).

The defendant's position here is that the burglary was remote in time from both the first and second theft offenses, seven and two months respectively. Further, he argues the State's evidence showed the burglary had a completely different *modus operandi* from the theft offenses. They involved employee theft during business hours, whereas the burglary offense involved a forced entry into the premises at night.

The defendant necessarily acknowledges that the identity of the location of the offenses was the same and, as noted previously, the fact the offenses did not occur immediately one after the other does not automatically eliminate the several acts from the category of a comprehensive transaction, since the mere passage or nonpassage of time is not determinative of whether charges have been properly joined. *People v. Hyche* (1978), 63 Ill. App. 3d 575, 578.

The State argues there was an identity of witnesses which justified joinder here, but the defendant points out it is the identity of the evidence given by the witnesses which provides a link between the offenses and which is important in determining whether joinder was proper. In this regard, he asserts that the testimony given by Officer Kline concerning the defendant's two separate interviews fails to give rise to an identity of evidence providing a link between the two offenses. The defendant states he can find no evidence of any discussion during the second interview concerning the thefts, and that the first interview which did concern the thefts contained only his denial of any knowledge or involvement in the burglary. In our opinion, the defendant's view of the evidence overlooks the forest for the trees. It is indisputable that the State presented testimony which showed the unauthorized removal on three occasions of shock absorbers from the Merlin Muffler Shop by the defendant, acting in concert with one or more persons, and the conversion of the contraband on each occasion into cash proceeds. The record shows the defendant initially denied any involvement in the burglary but later admitted the details of the burglary when the police told him they already knew everything. Officer Kline testified at the suppression hearing that the defendant told him that "they" had left a side door unlocked, that "he" had gained entry through the unlocked door, and that "he" kicked out a window

at the back of the business to make it appear that a burglary had occurred. Details of the defendant's purported statement to the police were substantially corroborated by other testimony presented at trial. The shop manager, Hamilton, testified there was a window broken out of the overhead door at the back of the building, and that a rock, apparently thrown from outside, was lying in the middle of the floor. Officer Keeney testified a window in an overhead garage door at the rear of the west side of the building had been broken out, and that a "normal entrance door" for pedestrians on the south side of the building was standing slightly open. The defendant admitted at trial he was trying to steal the shock absorbers on October 25 when he and Johnson were interrupted by the presence of the police. He testified, however, that he told the police he did not break into the shop in August and that he would have no reason to do so since he worked there every day.

The evidence presented in this case in order to prove the three offenses was not so voluminous or potentially confusing to the jury as to militate against joinder. (*Cf. People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1075, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256 (severance would have resulted in voluminous duplication of the evidence).) Additionally, the evidence strongly shows that in all three instances the defendant capitalized on his position of employment in order to facilitate removal of the property owned by his employer from the place of his employment, and that conversion of the contraband into ready cash was accomplished by someone other than himself.

Based on the record, it is not unreasonable or illogical to believe the change in the "usual" means of removing the shock absorbers from the packaging switch/dumpster/retrieval method to the burglary format was strictly an attempt to vary the *modus operandi* in order to draw police suspicion away from an employee theft theory. As such, the theft and burglary offenses were, in the large comprehensive view, part of the same general transaction or scheme. The offenses constituted concerted, systematic theft from the Merlin Muffler Shop over a period of time. *Cf. People v. Hyche* (1978), 63 Ill. App. 3d 575, 578 (where joinder was upheld in the case where both the narrow and larger view of the comprehensive transaction was that the offenses were criminal efforts to avoid apprehension); *People v. Reynolds* (1983), 116 Ill. App. 3d 328 (where denial of severance was upheld on record which showed second offense occurred as an outgrowth of the first in that the defendant was fleeing the scene of the first offense, was stopped for speeding by a police officer, whom defendant

then robbed, and when, after the defendant drove away in the squad car, evidence discovered in the defendant's own abandoned vehicle linked him with the first offense); *People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1074, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256 (where an indictment charging 63 counts of felony theft was upheld where the defendant systematically converted funds from the city over a period of years despite the use of different techniques in accomplishing the conversion).

■ We conclude the trial court did not abuse its discretion in denying severance in this case.

## EVIDENCE OF PRIOR CONVICTION

The defendant asserts the court abused its discretion when it denied his motion *in limine* to preclude revelation of the exact nature of his prior conviction for involuntary manslaughter. Defendant argues the mere fact of his conviction for a felony, without specifying the exact nature of that felony, would have been adequate to apprise the jury of his "previous disrespect for societal order" insofar as it might be viewed as affecting his credibility as a witness. (*People v. Wright* (1977), 51 Ill. App. 3d 461, 466 (Reardon, J., specially concurring).) He contends that involuntary manslaughter has no greater relation to testimonial veracity than any other felony, yet its potential for prejudice in this case was very great since it informed the jury that he was a "killer."

The State contends this issue has been waived because the defendant "only mention[ed] the error in admitting the offense at all, not in the name of the offense."

We do not believe that the issue has been waived. The defendant's post-trial motion charged it was error for the trial court to have denied his motion *in limine*, and the record clearly shows the basis of counsel's argument immediately prior to placing the defendant on the stand was identical to the contention raised here.

Alternatively, the State argues there was little danger of unfair prejudice in naming the offense since it was dissimilar to the crimes for which the defendant was being tried. (*Cf. People v. Ellison* (1984), 123 Ill. App. 3d 615 (generally, the more similar the prior and present offenses are, the more danger of unfair prejudice).) Further, if the jury remained uninformed as to the nature of the prior felony conviction it would be unable to decide how directly that offense related to the defendant's testimonial veracity.

■ We find no abuse of the trial court's discretion in denying the motion *in limine*.

The record shows that the trial court heard arguments of counsel and considered the *Montgomery* balancing test before deciding the motion. (*People v. Montgomery* (1971), 47 Ill. 2d 510.) Justice Reardon's special concurrence in *People v. Wright* (1977), 51 Ill. App. 3d 461, 465-66, expressed the view that "any recent criminal conviction *** can and should be used to impeach a witness if its probative value outweighs its prejudicial effect." Further, it was stated there "that the proper interpretation of the rule stated in *Montgomery* is that any offense, the punishment for which could result in a penitentiary sentence of one year or more or a sentence of death, is presumed to relate to honesty and veracity." (51 Ill. App. 3d 461, 466.) Thus, even an offense not directly involving honesty nevertheless is probative for impeachment purposes. Accord, *People v. Guthrie* (1978), 60 Ill. App. 3d 293; see *People v. Spates* (1979), 77 Ill. 2d 193, 204 (conviction for a violent felony is presumed to relate to testimonial deceit).

As to revelation of the specific nature of the prior conviction, we agree with the State's argument that the nature of the felony was virtually an indispensable tool in the jury's task in assessing the defendant's credibility. In our view, whatever untoward prejudice may have inured to the defendant by specifically naming the felony might as easily have been otherwise greatly exacerbated by withholding that information from the jury, which would then be free to imagine that the defendant had been convicted of an even more repugnant or more intentional crime. Whether the jury would perceive the defendant to be a "killer" is conjecture; the gist of involuntary manslaughter is recklessness (*People v. Frank* (1981), 98 Ill. App. 3d 388, *cert. denied* (1982), 456 U.S. 927, 72 L. Ed. 2d 442, 102 S. Ct. 1973), and the intent to kill or injure is not an element of that offense (*People v. Platter* (1980), 89 Ill. App. 3d 803, 821).

■ We perceive no error in the trial court's refusal to preclude mention of the specific nature of the defendant's prior conviction. We note the jury here was properly instructed that evidence of the defendant's prior conviction was not to be regarded by it for any purpose other than as it related to his credibility.

### INSTRUCTIONS

■ The defendant contends plain, reversible error occurred when the jury was improperly instructed concerning the statements made by him in that one of the bracketed, optional phrases of Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 3.06-3.07 (2d ed. 1981) was omitted; that is, the jury was instructed that it was for it to determine what weight should be given to the defendant's statements, but

not that it was also for it to determine *"whether* the defendant made the statement[s]." (Emphasis added.) (IPI Criminal Nos. 3.06-3.07.) Although acknowledging that he failed to properly preserve the instructional error he seeks to raise here, the defendant urges this court to consider the issue as provided under Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)). That is, "substantial defects [in instructions] are not waived by failure to make timely objections thereto if the interests of justice require." Defendant argues the lack of the proper instruction deprived the jury of its province to consider "the most important factual issue in the case" since "without the defendant's confessions there would have been insufficient evidence to convict him."

The State concedes that *People v. Cook* (1965), 33 Ill. 2d 363, cited by the defendant, holds that where a defendant denies making the statements attributed to him, he is entitled to an instruction directing the jury to determine not only the weight to be given the statements, but also to determine whether the statements were, in fact, made at all.

The State argues that any error in this regard has been waived, however, due to the defendant's failure either to object to, or point out the insufficiency of, the instruction, offer the correct instruction, or raise the issue in his post-trial motion. Further, it asserts the instructional error does not amount to a substantial defect warranting reversal. It points out there is strong evidence the jury knew it was free to accept or reject the evidence that the defendant had made the statements, since it acquitted him of one of the charges to which its evidence showed he confessed. Additionally, defendant's counsel's closing argument focused on the defendant's contention that he had only confessed to one of the three offenses, and denied confessing to the other two.

The defendant has waived this issue, and the record supports the conclusion that invocation of the plain error exception to the waiver rule created by Supreme Court Rule 451(c) is not warranted here. (87 Ill. 2d R. 451(c).) Our supreme court has repeatedly emphasized the limited nature of the plain error exceptions to Rule 451(c) waiver, restricting it

> "to the correction of 'grave errors' (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Jenkins* (1977), 69 Ill. 2d 61, 66) or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Joyner* (1972), 50 Ill. 2d 302, 307." *People v. Huckstead*

(1982), 91 Ill. 2d 536, 544.

As noted by the State, the fact defense counsel emphasized the defendant denied making statements admitting his complicity in two of the three offenses, combined with the fact the jury acquitted him of one of the offenses he denied confessing to, indicates the error was not "grave." The jury apparently felt no restriction in totally rejecting the evidence of the defendant's statement confessing his participation in the January felony theft. Additionally, despite defendant's conclusionary contention to the contrary, the evidence was not so closely balanced that "without the confessions" his convictions could not be sustained. Although defendant denied two of the statements, Officers Redden and Kline testified the defendant made the statements, and circumstantial evidence corroborative of the details of the defendant's statements was presented at trial. It is axiomatic that in order for a conviction based on a confession to be sustained, the confession must be corroborated, and this requirement is satisfied by proof of the *corpus delicti*. (*People v. Jordan* (1983), 114 Ill. App. 3d 16.) In establishing the *corpus delicti*,

> " 'there must be some evidence, apart from the confession, demonstrating that a crime occurred. Once the required showing has been made, the circumstances along with the confession may be considered in determining whether the *corpus delicti* is sufficiently proved (as well as the guilt of the defendant). Accord, McCormick, Evidence sec. 158, at 346-47 (2d ed. 1972).' *People v. Willingham* (1982), 89 Ill. 2d 352, 359-60, 432 N.E.2d 861, 864-65.)" *People v. Jordan* (1983), 114 Ill. App. 3d 16, 23.

This issue was waived, and no plain error warranting reversal is evident.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

HOPF and NASH, JJ., concur.