THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE MAYS, Defendant-Appellant.

First District (1st Division) No. 85—3362

Opinion filed November 7, 1988.—Rehearing denied December 20, 1988.— Modified opinion filed December 27, 1988.

Paul P. Biebel, Jr., Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Gael O'Brien, Special Assistant State's Attorney, and Kenneth T. McCurry, Assistant State's Attorney, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, Maurice Mays (defendant) was convicted of the murder of Alonza Douglas (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) and the attempted murders of police officers George Basile and Joseph L. DiGiacomo (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 9—1) and sentenced to natural life imprisonment without parole. Defendant appeals his convictions and sentence, contending the following reversible errors: (1) the trial court erred in finding that defendant's pretrial statement was voluntary; (2) the State conducted improper cross-examination of the defense's expert witness at defendant's motion to suppress hearing; (3) the trial court erred in denying defendant's motion to sever the murder and attempted murder counts; (4) the trial court erred in refusing to grant defendant's motion for a mistrial because of improper comments regarding defendant's parole and arrest record; (5) the trial court erred in sending to the jury room two guns found in defendant's friend's home at the time of his arrest; (6) the State failed to prove beyond a reasonable doubt defendant's specific intent to kill; (7) the State failed to prove beyond a reasonable doubt that defendant was convicted of two prior Class X felonies to warrant a natural life sentence under the Habitual Criminal Act (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1 *et seq.*); (8) the Illinois mandatory life sentence statute was amended in violation of the Illinois Constitution; and (9) the State purposefully discriminated against blacks in the exercise of its peremptory challenges.

At trial, the State introduced the following evidence. Larome Cotton testified that on March 12, 1984, at approximately 6:30 p.m., while awaiting a CTA bus on the corner of 79th and Essex in Chicago, he heard a voice yell "[D]on't do it Mays [or Hays]" and recognized the voice as belonging to Alonza Douglas. Cotton then observed Douglas sitting in a car and defendant, whom he recognized from the neighborhood, standing outside the open car door. He thereafter saw defendant shoot Douglas three or four times and then abscond.

Chicago police officer George Basile testified that Douglas was pronounced dead on arrival at South Shore Hospital. Basile interviewed Cotton, who identified defendant as the shooter and gave Ba-

sile defendant's girlfriend's address as a possible location for defendant. At this address, Basile and his partners learned from Anita McDonnell that defendant could be found at his other girlfriend's home in Blue Island. On their arrival at the Blue Island address, Sharon Blair, the occupant of the apartment, denied that defendant was there and admitted Basile and DiGiacomo into her apartment.

The officers searched the apartment. Upon entering a bedroom, DiGiacomo observed two feet on top of a box inside the closet and then motioned for Basile to enter the room. Basile and DiGiacomo approached the closet. Basile reached out and pulled the closet doors open, at which time defendant, with gun in hand, extended his arm from the closet and fired at Basile and DiGiacomo. Basile and DiGiacomo returned fire and wounded defendant.

Officers at the scene recovered a gun from defendant, two other guns in another room of the apartment, and a tan, Western-style jacket, which Cotton identified as the coat defendant wore when he shot Douglas. Firearms examiner Robert Smith gave an opinion at trial that the gun recovered from defendant was the same gun that fired the shots which killed Douglas.

Defendant did not testify at trial.

■ On appeal, defendant initially contends that the trial court erred in denying his motion to suppress his pretrial statement. Defendant argues that his statement to police made from an intensive-care unit hospital bed within 12 hours of his receiving two gunshot wounds and three or four hours after receiving doses of Demerol and Valium was not voluntarily given. The finding of the trial court as to the voluntariness of a statement on a motion to suppress will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Daugherty* (1987), 161 Ill. App. 3d 394, 397, 514 N.E.2d 228, 231; *People v. Kincaid* (1981), 87 Ill. 2d 107, 117-18, 429 N.E.2d 508, 512; *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606.) With this standard in mind, we consider defendant's contention.

Defendant cites *Townsend v. Sain* (1963), 372 U.S. 293, 307, 9 L. Ed. 2d 770, 782, 83 S. Ct. 745, 754, for his assertion that to determine whether a confession is voluntary, the test is solely whether the statement was the product of defendant's rational intellect and free will. In *Townsend*, the Supreme Court found defendant's confession involuntary because his will was overcome at the time he gave his statement to police after taking a drug with truth-serum properties. For the following reasons, we find that defendant has incorrectly stated the test to determine whether a confession is obtained under

circumstances violative of the fourteenth amendment.

■ The fourteenth amendment due process clause has long been held to place restraints on the admission of an accused's confession at his trial. (*Brown v. Mississippi* (1936), 297 U.S. 278, 80 L. Ed. 682, 56 S. Ct. 461.) Early Supreme Court cases indicated that the due process test, referred to as the "voluntariness requirement," excluded a confession where obtained under unfair circumstances affecting its reliability and where, although its reliability was not in question, the confession was obtained by offensive police practices. (*Brown v. Mississippi* (1936), 297 U.S. 278, 80 L. Ed. 682, 56 S. Ct. 461; *Rogers v. Richmond* (1961), 365 U.S. 534, 5 L. Ed. 2d 760, 81 S. Ct. 735; see 1 W. LaFave & J. Israel, Criminal Procedure §6.2(b) (1984).) The later Supreme Court decision *Townsend v. Sain* (1963), 372 U.S. 293, 307, 9 L. Ed. 2d 770, 782, 83 S. Ct. 745, 754, appeared to extend the reach of the voluntariness requirement to situations where the confession was not the product of the defendant's "free and rational choice," even though the confession was not the result of police wrongdoing. (See 1 W. LaFave & J. Israel, Criminal Procedure §6.2(b) (1984).) Illinois courts have so interpreted *Townsend* in cases involving the issue of the voluntariness of a statement by an accused under the effect of drugs. *People v. Kincaid* (1981), 87 Ill. 2d 107, 117-19, 429 N.E.2d 508, 511-12; *People v. Koesterer* (1976), 44 Ill. App. 3d 468, 479, 358 N.E.2d 295, 303-04; *People v. Delgado* (1975), 30 Ill. App. 3d 890, 893, 333 N.E.2d 633, 635; *People v. Kelley* (1973), 10 Ill. App. 3d 193, 195, 293 N.E.2d 158, 160.

The United States Supreme Court, however, has since denied that constitutional protection extends to confessions obtained without circumstances evincing police coercion. In *Colorado v. Connelly* (1986), 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515, the Supreme Court held that a defendant's mental condition by itself does not dispose of the inquiry into constitutional voluntariness; that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the due process clause of the fourteenth amendment. (479 U.S. 157, 165, 167, 93 L. Ed. 2d 473, 483, 484, 107 S. Ct. 515, 520, 522.) In reviewing the history of Supreme Court cases in this area, the Court stated:

> "[T]he cases considered by this Court over the 50 years since *Brown v. Mississippi* have focused upon the crucial element of police overreaching. *** Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. *** [Although] courts have found the mental condi-

tion of the defendant a more significant factor in the 'voluntariness' calculus [citation], *** this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " (479 U.S. at 163-64, 93 L. Ed. 2d at 482, 107 S. Ct. at 520.)

The Court then concluded that *Townsend* did not deviate from this principle since it presented a situation of police wrongdoing, where a police physician had given Townsend the truth-serum drug and the subsequent confession was obtained by officers who knew that Townsend had been given the truth serum.

In applying these principles to the case before it, the Court found that the Colorado State court had erred in excluding a confession volunteered to police by a defendant who suffered from a psychosis that interfered with his ability to make free and rational choices since there was no indication from defendant or the trial court of the crucial element of police overreaching. The Court reasoned:

"The flaw in respondent's constitutional argument is that it would expand our previous line of 'voluntariness' cases into a far-ranging requirement that courts must divine a defendant's motivation for speaking or acting as he did even though there be no claim that governmental conduct coerced his decision.
***

We have previously cautioned against expanding 'currently applicable exclusionary rules by erecting additional barriers to placing truthful and probative evidence before state juries.' *** [Citation.] *** A statement rendered by one in the condition of respondent might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum *** and not by the Due Process Clause of the Fourteenth Amendment. 'The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false.' [Citation.]" 479 U.S. at 165-67, 93 L. Ed. 2d at 483-84, 107 S. Ct. at 521-22.

In the case at bar, we need not examine whether defendant's will was overborne by the effects of the medication since we find that there is no indication of any police coercion or wrongdoing here. At the time of his statement, defendant was listed in critical but stable condition. Detective Glynn and Assistant State's Attorney Velcich received approval from defendant's doctor to question defendant. His doctor informed them that defendant was conscious and knew what

was happening around him. Velcich read defendant his *Miranda* rights and provided him with a typewritten sheet containing these warnings.

Nor is there any indication that Glynn or Velcich was aware that defendant had any mental deficiencies as a result of the medication he received. Neither Glynn nor Velcich had difficulty understanding defendant. At their request, defendant read the *Miranda* rights out loud and indicated that he understood his rights. Velcich wrote out defendant's statement, which was due to the fact that defendant was unable to write because of his injuries. Defendant subsequently read the statement, directed Velcich to make four changes in the statement, and initialed all of his alterations. These circumstances surrounding the confession do not suggest any police wrongdoing.

Moreover, as in *Connelly*, defendant has not challenged the police conduct in this case as wrongful. Without the necessary showing of unfair police practices or police misconduct, we find the admission of defendant's statement did not violate his constitutional rights.

■ With regard to the motion to suppress hearing, defendant has the following objections to the State's cross-examination of the defense expert witness: (1) that the State improperly presented a question to the nontreating physician in nonhypothetical form; (2) that the expert's answers were outside his area of expertise; and (3) that the questions and answers invaded the province of the jury. Defendant, as emphasized by the State, has waived this issue for review due to his failure to preserve the issue in his motion for a new trial. (*People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.) Notwithstanding this waiver, defendant's objections are without merit.

Defendant's expert witness in pharmacy, Dr. Ross Simkover, who had not examined defendant but reviewed his hospital records, testified on direct examination at the suppression hearing by outlining the medication taken by defendant and his physical state at the time he gave his statement. He also discussed what effects the medication had on a person's mental state. On cross-examination, the State inquired into whether defendant's will was overborne at the time he made this statement in light of the drugs administered and whether a defendant who gave a detailed statement such as that given by defendant would have an altered mental state to the extent that he would be unable to understand the effect of his actions. The expert responded to the latter question by stating, "If that is indeed his statement, then I would say the patient did have fairly good mental capacity at the time."

The State's question concerning defendant's mental state was not improper. The question was in correct hypothetical form as it referred

to "a defendant" under those conditions. The question was also proper cross-examination since the expert testified on direct examination as to the effects of the medication taken by defendant and his physical condition on a person's mental state. The State only added the further fact that a person having taken the medication could make a detailed statement. The State's question as to whether defendant's will was overborne, although improper, does not warrant a reversal in this case. Since we have found no evidence of police misconduct here, any error in questions propounded to the expert on the issue of the effects of the medication did not prejudice defendant.

Defendant next contends that the murder and attempted murder counts were improperly joined. Section 111—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a)) governs the joinder of related prosecutions. It provides:

"Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on two or more acts which are part of the same comprehensive transaction." Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a).

■ In determining whether defendant's acts were part of "the same comprehensive transaction," the trial court has no precise test to guide it; rather, each case turns on the facts presented, and the matter is largely within the sound discretion of the trial court. (*People v. White* (1984), 129 Ill. App. 3d 308, 315, 472 N.E.2d 553, 558; *People v. Sockwell* (1977), 55 Ill. App. 3d 174, 175, 371 N.E.2d 100, 101; *People v. Daniels* (1976), 35 Ill. App. 3d 791, 797-98, 342 N.E.2d 809, 813.) Illinois case law, though, has revealed some important factors to consider in determining whether to sever charges, including the proximity of time and location of the various charges and the identity of evidence which would be presented to prove each charge. *People v. White* (1984), 129 Ill. App. 3d 308, 315, 472 N.E.2d 553, 559; *People v. Mikel* (1979), 73 Ill. App. 3d 21, 27, 391 N.E.2d 550, 555.

Defendant asserts that the offenses here are not part of the same comprehensive transaction because they involve different victims, they occurred six hours apart and several miles from each other, and the circumstances of an arrest are not generally relevant at trial. The State, on the other hand, maintains that the attempted murder was part of the same comprehensive transaction as the murder because it was part of a criminal effort to avoid apprehension for the murder.

■ A similar situation was presented in *People v. Daniels* (1976), 35 Ill. App. 3d 791, 798, 342 N.E.2d 809, 813. The court there af-

firmed the trial court's denial of a motion for severance where defendant committed an armed robbery and then, 50 minutes later while the police were in pursuit of him, he fired shots at an officer. Although the time frame is no longer here, the State argues that the mere passage of a certain amount of time is not determinative of whether charges are properly joined, citing *People v. Hyche* (1978), 63 Ill. App. 3d 575, 380 N.E.2d 373. It contends that the circumstances here, wherein shortly after the incident police sought out defendant at his girlfriend's residence and thereafter proceeded to a second address provided by his girlfriend, where defendant awaited armed inside a closet, indicate that six hours is not too long a period to find proximity of time. We agree.

■■ Moreover, contrary to defendant's assertion that the circumstances of his arrest are not relevant to his murder charge and the introduction of this evidence prejudiced his right to receive a fair trial, we find that the factual proof during the time period of the arrest is relevant to the murder charge, and its probative value outweighs any prejudice to defendant. Defendant's attempt to hide from police in a closet while armed, firing at the officers to avoid prosecution, and the recovery of defendant's gun by police are the same facts relevant to demonstrate defendant's consciousness of guilt of Cotton's murder, as to prove defendant's specific intent to kill Basile and DiGiacomo. The murder and attempted murder charges, therefore, were properly joined.

Defendant further challenges the trial court's refusal to grant his motion for a mistrial because of improper comments made by a State witness. Defendant objects to two statements made by Officer Basile relating to defendant's collateral contact with the law, both of which were stated in the presence of the jury. In response to a question propounded by the State concerning the addresses he had for defendant, Basile replied, "The addresses were 1847 West Canal, in Blue Island, Illinois, the address of a recent girlfriend, and his mother's address, 8100 South Essex, an address he was paroled to." Basile's second statement, objected to by defendant, was made during the State's examination leading to the identification of defendant. Basile stated: "We had assisting detectives go to the police department headquarters at 11th and State to obtain arrest records and a photograph of the wanted offender, Maurice Mays."

■■ ■ The general rule governing evidence of the commission of other crimes by an accused or prior arrests of an accused is that such evidence is inadmissible unless it is relevant to establish identity, intent, knowledge, motive, a common scheme or design or a fact mate-

rial to the issue on trial. (*People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063; *People v. Jordan* (1974), 18 Ill. App. 3d 133, 309 N.E.2d 274.) The first statement, concerning defendant's parole, clearly is inadmissible under this rule. The second statement, however, is admissible since it demonstrates the manner and method the police officers employed to positively identify defendant as Douglas' killer. In *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978, the court held that "mug shot" photos were admissible even though they are often evidence of other crimes since the photos went directly to defendant's identification by an occurrence witness. Similarly, Basile's references to a police photograph and defendant's arrest record are relevant to the identification of defendant, as the photo was obtained for an identification by an occurrence witness and the arrest record further assisted the officers in locating defendant. Contrary to the cases cited by defendant, *People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837, and *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, wherein the "other crimes" testimony had nothing to do with the case on trial, the nonspecific "other crimes" testimony here is relevant to the identification and apprehension of defendant for the case on trial.

■ As to Basile's reference to defendant's parole, defendant contends that the trial court's failure to grant him a new trial warrants a reversal of his conviction. As a general rule, an instruction to disregard evidence cures error in its admission, particularly where the improper testimony is not directly responsive to the question and is promptly stricken with an instruction to the jury to disregard it. (*People v. Brooks* (1988), 172 Ill. App. 3d 417, 526 N.E.2d 420; *People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683; *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766.) The remark as to defendant's parole, like the witness' reference to defendant's criminal history sheet in the conviction upheld in *Johnson*, was inadvertent, went beyond the question asked, and was promptly stricken accompanied with a cautionary instruction.

■ Defendant, however, argues that the cautionary instruction was insufficient to cure the error since the reference to other crimes was so prejudicial that it denied him a fair trial. The erroneous admission of evidence of other crimes ordinarily calls for reversal unless the record affirmatively shows that the error was not prejudicial. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 141, 402 N.E.2d 238, 244; *People v. Romero* (1977), 66 Ill. 2d 325, 332, 362 N.E.2d 288, 291.) The record here affirmatively shows that the guilty finding was not the result of the improper remark. The evidence supporting defendant's guilt here

was overwhelming. An eyewitness to the shooting of Douglas identified defendant in open court as the "shooter." There was also evidence that the gun recovered from defendant moments after he shot at the police officers was the same gun used to fire the bullets that killed Douglas. In view of the circumstances surrounding the improper comment, the trial court's prompt cautionary instruction, and the overwhelming evidence as to defendant's guilt, we find that the court did not commit reversible error in refusing to grant defendant a mistrial.

The next issue defendant raises is whether the trial court committed reversible error in sending to the jury room two guns found in defendant's friend's home at the time defendant was arrested. Although defendant did not object at trial to testimony relating to these guns, which were recovered from a dresser drawer in a room other than where defendant was found, defendant objected to these exhibits being sent to the jury room because they were unrelated to defendant and to the charged offenses.

A trial court may permit all admitted evidence relevant to any material fact to go to the jury room. (*People v. Pointer* (1981), 93 Ill. App. 3d 1064, 418 N.E.2d 1; *People v. Watson* (1982), 107 Ill. App. 3d 691, 696, 438 N.E.2d 453.) The State maintains that the two guns are relevant to prove defendant's specific intent to commit the murder of the police officers, as one of the two loaded guns was in a "cocked" position. The State, however, has not established any connection between the two guns and the charged offense since defendant was not the owner of the home and there was no evidence that defendant was in the room where the guns were found or that defendant knew of their existence.

The State attempts to buttress its position by analogizing the situation here to that in *People v. Peto* (1967), 38 Ill. 2d 45, 230 N.E.2d 236, where the court found a gun properly received into evidence because the gun, together with other articles, was suitable for use in the charged offense. *Peto* is clearly distinguishable from the instant case. There, the gun was found with other articles suitable for use in a burglary in a car occupied by defendants within one-half hour after the burglary. Here, defendant was not in the same room as the gun, the apartment belonged to his friend, and there was no evidence linking the gun to any offense or intended offense.

Nevertheless, this error does not require reversal. The guns did not suggest evidence of prior crimes of defendant or have any significant prejudicial effect since the guns were not found in defendant's possession, in his immediate vicinity, or even in his home. This is

unlike the situation presented in *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734. There, it was reversible error for the State to elicit testimony and make improper argument concerning weapons found in defendant's home that were unrelated to the crime because the evidence against that defendant was mainly circumstantial. Since the resulting prejudice in the instant case is minimal and the evidence of defendant's guilt is overwhelming, we hold that the submission of the guns to the jury was harmless.

■■ Defendant next contends that his conviction for attempted murder of Officers DiGiacomo and Basile should be reversed because the State failed to prove beyond a reasonable doubt his specific intent to kill. To sustain a conviction for attempted murder, the State must prove the specific intent to take a human life, although this state of mind may be inferred by the surrounding circumstances, the character of the assault, or the use of a deadly weapon. (*People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535; *People v. Seats* (1979), 68 Ill. App. 3d 889, 386 N.E.2d 879; *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446.) The very fact that a person fired a gun at another supports the conclusion that the person acted with the intent to kill. *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 1031, 379 N.E.2d 641, 643; *People v. Munoz* (1976), 44 Ill. App. 3d 339, 341, 358 N.E.2d 82, 83.

Defendant argues that the discrepancies in DiGiacomo's and Basile's testimony as to the number of shots fired and as to their positions in relation to defendant when the shots were fired cast a reasonable doubt as to whether defendant fired "at" the officers and therefore intended to kill them. Specifically, defendants refers to Basile's statement to the Office of Professional Standards and in a police report that defendant fired only one bullet. Defendant asserts that this statement, along with the fact that only one bullet was found, indicates a reasonable doubt that defendant intended to kill two persons. In addition, defendant claims that DiGiacomo's testimony at trial that he was positioned on the side of the closet against the wall and DiGiacomo's and Basile's "contradictory" testimony as to whether Basile was standing in front of the closet or in a corner when defendant fired the shot out of the closet straight across the room cast a reasonable doubt that defendant intended to kill either of the officers.

■■ We find that the officers' testimony and the surrounding circumstances are sufficient to support a finding of specific intent. As to the alleged discrepancies in the officers' positions, Basile clearly testified that he was "centered with the closet but to the right" and Di-

Giacomo testified Basile had stationed himself in the corner of the room "facing the closet" at the time DiGiacomo reached over from the side of the door, pulled the door, and defendant instantaneously fired a shot. Both officers clearly stated that a bullet was fired at them—DiGiacomo stating that defendant's arm came out right "in his face," and Basile testifying the shot was fired directly at him and went to his left. Both officers also explained Basile's statement concerning the number of bullets defendant fired. They testified that after defendant fired the first shot, they were unsure of whose bullets continued to fire because of the barrage of bullets and confusion that followed. Afterwards, the officers discovered two fired shells in defendant's gun.

In any event, the jury could have found that the officers were positioned in such a way that defendant fired at both officers. The jury listened to their testimony, viewed diagrams demonstrating the officers' positions, and considered the events leading to the shooting. The officers' testimony is not so improbable as to raise a reasonable doubt of guilt to require a reviewing court to disturb the jury's verdict. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

 As to the sentence he received, defendant contends that the State failed to prove beyond a reasonable doubt that defendant was convicted of two prior Class X felonies to warrant his natural life imprisonment sentence under the Habitual Criminal Act. Under the Habitual Criminal Act, any defendant who has been twice convicted of a Class X or murder offense and is thereafter convicted of a Class X or murder offense is a habitual criminal and shall be sentenced to life imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 33B—1.) The State has the burden of proving the existence of the prior convictions beyond a reasonable doubt. (*People v. Mason* (1983), 119 Ill. App. 3d 516, 456 N.E.2d 864.) The Act provides that a duly authenticated copy of the record of these former convictions shall be *prima facie* evidence of such former convictions. Ill. Rev. Stat. 1985, ch. 38, par. 33B—2(b).

Defendant acknowledges his prior conviction for a Class X offense in 1981, but challenges the State's proof on a 1970 conviction, indictment No. 70—363, for attempted murder, attempted robbery, and aggravated battery. The State introduced a "certified statement of conviction" from the clerk of the circuit court of Cook County certifying that defendant pled guilty to those charges and also submitted an Illinois Department of Corrections record dated October 1,1985, stating that defendant was convicted of those charges. Defendant attempted to rebut this evidence with the original 1970 mittimus showing only

the conviction for attempted robbery, which is not a Class X offense. Defendant maintains that this discrepancy, along with a variance between the documents submitted by the State wherein the Department of Corrections record contained attempted *armed* robbery instead of attempted robbery, create a reasonable doubt that the 1970 conviction was for a Class X offense.

■■■ It is established that a mittimus is not part of the common law record; that it is the judgment of the court which is the authority for the detention of the prisoner; that in case of variance between the language of commitment and judgment of conviction, the latter will prevail. (*People v. Miles* (1983), 117 Ill. App. 3d 257, 453 N.E.2d 68; *People ex rel. Fuller v. Twomey* (1975), 29 Ill. App. 3d 523, 331 N.E.2d 103; *People v. Anderson* (1950), 407 Ill. 503, 95 N.E.2d 366.) Defendant's submission of the mittimus into evidence in the instant case did not create a reasonable doubt as to the 1970 Class X felony conviction since the "certified statement of conviction" from the clerk of the circuit court of Cook County is the official certification of a judgment of a court in Cook County and it controls over the mittimus.

The State met its burden of proof by introducing into evidence this certification. Defendant did not properly rebut the accuracy of the certified statement of conviction in this case. Although defendant claims that the transcript of the 1970 proceedings was unavailable here because the court reporter could not locate the notes to the proceeding, defendant could have rebutted the official certification by introducing evidence showing the original order of judgment entered by the trial court on the court sheets.

■■■ Defendant also challenges his life imprisonment sentence on the ground that the Illinois mandatory life sentence statute was amended in 1980 in violation of the Illinois Constitution. Defendant argues that section 33B—1 (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1) was unlawfully amended in that, upon its passage, it was not "germane" to the bill to which it was attached, in violation of article IV of the Illinois Constitution. Ill. Const. 1970, art. IV, §8.

The Habitual Criminal Act has been tested on many constitutional grounds, and it has repeatedly been found to be constitutional. (*People v. Glover* (1988), 173 Ill. App. 3d 678; *People v. Morissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781; *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059; *People v. Washington* (1984), 125 Ill. App. 3d 109, 465 N.E.2d 666.) The constitutional issue raised by defendant has been presented on appeal in *People v. Morissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781, and to this court in *People v. Cannady* (1987), 159 Ill. App. 3d 1086, 513 N.E.2d 118. In both these cases, the

court held that the defendant waived the argument on appeal because the defendant did not preserve the issue of the constitutionality of the statute by presenting proper objections to the trial court. (See *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) We find that defendant has likewise waived the issue here.

Moreover, in *Cannady*, we addressed the merits of the issue of whether the amendment was germane to the original bill and found no constitutional violation in the passage of the statute. We decline today to reconsider this holding.

■■ Finally, we address defendant's contention that the State's use of peremptory challenges to exclude black jurors from the petit jury violated his equal protection rights under the fourteenth amendment and violated his sixth amendment right to an impartial jury drawn from a fair cross-section of the community. As to defendant's latter contention, the cross-section principle historically has been invoked to require that jury venires be drawn from a source fairly representative of the community. (*Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.) The United States and Illinois Supreme Courts have consistently declined to extend the fair–cross-section requirement of the sixth amendment to require that petit juries reflect the composition of the community at large. (*Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758; *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Gaines* (1984), 105 Ill. 2d 79, 473 N.E.2d 868, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666; *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.) We, therefore, reject defendant's sixth amendment claim.

■■ As to his equal protection claim, defendant argues that the case should be remanded to the trial court for a hearing, pursuant to the rule enunciated in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The United States Supreme Court has long held that the equal protection clause prohibits racial discrimination in the selection of petit jurors. (*Strauder v. West Virginia* (1880), 100 U.S. 303, 25 L. Ed. 664.) In *Batson*, the Court reconsidered its earlier rulings that a defendant who is a member of the excluded class could make out a *prima facie* case of discriminatory jury selection only by showing that the peremptory challenge system was "being perverted" by the systematic exclusion of blacks in case after case. (*Norris v. Alabama* (1935), 294 U.S. 587, 589, 79 L. Ed. 1074, 1076, 55 S. Ct. 579, 580; *Swain v. Alabama* (1965), 380 U.S. 202, 224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.) The Court held that a defendant may now establish a *prima facie* case solely on evidence concerning

the prosecutor's exercise of peremptory challenges at defendant's own trial. Once the defendant meets his burden of proof, the burden then shifts to the State to come forward with a racially neutral explanation for the exclusion of prospective jurors of defendant's race. The trial court thereupon must determine whether the State engaged in purposeful discrimination. *Batson v. Kentucky* (1986), 476 U.S. 79, 96-97, 90 L. Ed. 2d 69, 87-88, 106 S. Ct. 1712, 1722-23.

■■■ Even though *Batson* was decided while the instant case was pending on direct appeal, it is established that *Batson* applies retroactively to cases pending on direct appeal or not yet final when the case was decided. (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708; *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816; *People v. Peters* (1986), 144 Ill. App. 3d 310, 494 N.E.2d 853.) Nonetheless, the State challenges *Batson*'s applicability to the instant case. Relying on *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 502 N.E.2d 304, it argues that since the record is devoid of evidence of purposeful discrimination, the issue is waived on review. In *Johnson*, the court found the *Batson* issue was waived on appeal because the record did not identify which of the excused veniremen were black or the racial composition of the jury ultimately selected. The only indication of the race of any of the prospective jurors came from defense counsel's remarks after *voir dire* that two blacks, a Latino, a Hawaiian and a Vietnamese were excluded.

■■■ Recently, in *People v. Colley* (1988), 173 Ill. App. 3d 798, the court distinguished the facts in *Johnson* and declined to find a waiver where the State, in response to defense counsel's statement that three of the State's six peremptory challenges were used to exclude blacks, admitted that in fact four of a total of eight challenges were so used. Similarly, the instant case is distinguishable from *Johnson*. The trial court here confirmed defendant's representations. In response to defense counsel's motion for a new trial based upon the State's purposeful exclusion of blacks in the exercise of its peremptory challenges, the trial court stated: "I invite the State to elucidate and give some reasons why as to out of seven challenges, six of those challenges were exercised against the only black people on the venire." Based upon the court's own observations, the record establishes the percentage of challenges exercised to exclude blacks, the number of blacks in the venire, and the racial composition of the panel of 12 jurors. We find defendant has not waived this issue on appeal.

■■■ Accordingly, we remand this case to the trial court for a hearing to be conducted in accordance with *Batson*. In light of the Illi-

nois Supreme Court's recent recognition in *People v. Evans* (1988), 125 Ill. 2d 50, 66, that the initial *prima facie* determination is for the judgment of the trial judge, we leave this determination for the trial court. To establish the necessary inference of purposeful discrimination and make out a *prima facie* case, *Batson* requires, first, that the defendant show that the prosecutor has exercised peremptory challenges to remove members of a cognizable racial group of which defendant is member; second, that the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges are a jury selection practice that permits discrimination by those of a mind to discriminate; and finally, the defendant must show that these facts, and any other relevant facts and circumstances, raise an inference that the prosecutor used these challenges to exclude veniremen from the petit jury solely on account of their race. *Batson v. Kentucky* (1986), 476 U.S. 79, 96-97, 90 L. Ed. 2d 69, 87-88, 106 S. Ct. 1712, 1722-23.

The Illinois Supreme Court has outlined a nonexclusive list of relevant circumstances the trial court may consider in reaching its determination: a pattern of strikes against black jurors; the prosecutor's questions and statements during *voir dire* examination; the disproportionate use of peremptory challenges against blacks; the level of black representation in the venire as compared to the jury; whether the excluded blacks were a heterogeneous group sharing race as their only common characteristic; and the race of the defendant, the victim and the witnesses. *People v. Evans* (1988), 125 Ill. 2d 50, 63-64.

If the trial court finds that defendant has established its *prima facie* case, the trial court is to allow the State an opportunity to provide a neutral explanation for the exercise of those challenges. If the court finds that the State has purposefully discriminated, defendant's sentence is vacated and defendant is to receive a new trial in accordance with this opinion. If the court finds that defendant has not made out a *prima facie* case of racial discrimination, or that the State has presented sufficient neutral explanations to rebut defendant's *prima facie* case of racial discrimination, defendant's convictions and sentence are affirmed.

Remanded with instructions.

CAMPBELL, P.J., and O'CONNOR, J., concur.