(No. 61732.

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DEXTER CLARK, Appellant.

*Opinion filed November 20, 1986.*

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, and John Thomas Moran, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry and Timothy W. Heath, Assistant State's Attorneys, of counsel), for the People.

Theodore Gottfried, of Springfield, and G. Joseph Weller and Kathleen J. Hamill, of Elgin, for *amicus curiae* Office of the State Appellate Defender.

JUSTICE MILLER delivered the opinion of the court:

After the circuit court of Cook County denied his motion to suppress his confession as involuntary, the defendant, Dexter Clark, waived his right to trial by jury. At the conclusion of the subsequent bench trial, the judge found the defendant guilty of aggravated arson (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)), arson (Ill. Rev. Stat. 1981, ch. 38, par. 20—1), and possession of an incendiary device (Ill. Rev. Stat. 1981, ch. 38, par. 20—2). The trial judge entered judgment on all three convictions but merged the arson conviction into the aggravated-arson conviction for purposes of sentencing. Clark was then sentenced to 15 years' imprisonment for aggravated arson and to a concurrent 3-year term of imprisonment for possession of an incendiary device. In a Rule 23 order (87 Ill. 2d R. 23), the appellate court affirmed the convictions and sentences (131 Ill. App. 3d 1160). We al-

lowed defendant's petition for leave to appeal, pursuant to Rule 315 (94 Ill. 2d R. 315(a)). We now consider whether the defendant's confession following his arrest was properly admitted into evidence, and whether the defendant's conviction under the former version of the aggravated-arson statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)) may stand.

In the early morning hours of July 26, 1982, Chicago police officers responded to a radio call to investigate a reported arson at 5847 North Magnolia in Chicago. Upon arrival, the officers observed separate fires on the first- and second-floor porches at the rear of a two-story apartment building. After alerting the residents of the building, the officers extinguished both fires, using a fire extinguisher and a rug. In the center of each fire was a "Molotov cocktail"—a whiskey bottle filled with flammable liquid, with a rag wick protruding from the bottle's open end. On the floor of the first-floor apartment, the officers discovered a similar bottle filled with flammable liquid. This bottle, which was not burning, had apparently been thrown through a window.

Approximately an hour after the incident described, the police received a report that a man armed with a gun was seen at 5844 North Magnolia, across the street from the earlier fire. The police returned to the scene and searched the area. During the search, Officers Carey and Joyce and Detective Campbell discovered the gunman in a backyard at 5850 North Magnolia. The gunman, later identified as the defendant, was sitting with his back against a tree and a semiautomatic rifle lying across his lap. He wore a green army fatigue jacket and had a Mohawk Indian style haircut. He held an open bottle of whiskey in his right hand.

With drawn weapons, the officers instructed the defendant not to move, and handcuffed him. The police found a loaded pistol in the waistband of the defendant's

pants, and he advised them that he had another handgun in his back waistband. The officers removed the weapons from the defendant's possession and placed him under arrest. The evidence is undisputed that defendant did not at any time offer resistance to his arrest.

Detective Campbell testified at trial that after the defendant was handcuffed the police officers lifted the defendant to his feet. As other officers arrived at the scene and led the defendant to a nearby police squadrol, Campbell remained near the tree where the defendant had been sitting, and unloaded the weapons taken from the defendant. Campbell stated that after he had unloaded the weapons he observed the defendant lying face down near the squadrol. Campbell testified that he had not seen the defendant fall to the ground, and no other witness explained how the defendant came to be on the ground. Detective Campbell, Officer Carey, and other officers testified that at the time of his arrest the defendant appeared normal with no sign of injury. The officers stated that they did not physically abuse the defendant, nor did they see anyone else abuse or injure him.

Detective Campbell testified that he next saw the defendant at the police lockup, shortly after the defendant had been transported to the police station. At the lockup, Campbell read the defendant his *Miranda* rights from a preprinted card. The defendant then asked Detective Campbell to return to the scene of the arrest to look for a silver cross that had been "ripped" from his neck during his arrest. Campbell stated that he complied with the defendant's request but did not say whether he found the cross.

A short time later, Detective Campbell returned to the defendant's cell with Assistant State's Attorney Gil Grossi. Grossi advised the defendant of his constitutional rights and began to question him. The defendant willingly responded to the questions asked of him by the

State's Attorney, and confessed that he had thrown the Molotov cocktails at the apartment building. From the outset of the interview, however, the State's Attorney observed that the defendant was coughing severely and repeatedly and that the defendant sometimes turned to expectorate into the commode. When the defendant was asked by Grossi about his condition, the defendant stated that he was dying of lung cancer. Grossi testified that, aside from the cough, the defendant appeared to be in good physical condition and exhibited no sign of injury.

Prior to trial, the defendant filed a motion to suppress his confession as involuntary, alleging the confession was a product of police brutality. At an evidentiary hearing on the motion, the defense presented testimony that soon after giving the incriminating statement to the State's Attorney the defendant was taken to the emergency room at Weiss Hospital. Dr. Subrahmanyam Chivukula was on duty in the emergency room of the hospital at that time. Dr. Chivukula testified at the suppression hearing that he found that defendant was suffering from subcutaneous emphysema, which is a condition described as having free air under the skin of the neck. According to Dr. Chivukula, further examination revealed that the defendant had a crushed trachea which resulted from a blunt trauma to the defendant's neck and upper chest area. Dr. Chivukula stated that the defendant's injury was potentially fatal and required immediate surgery. Dr. Chivukula stated, however, that he would have been unable to diagnose defendant's injury without putting his hands on the defendant's neck. The doctor also explained that, if the defendant's shirt were removed, one looking closely might be able to see abrasions and contusions on defendant's neck. Dr. Chivukula testified that defendant stated that his injuries were received when he was beaten up and "kicked all over." Dr. Chivukula did not indicate, however, whether the defend-

ant told Chivukula who had beaten him. The doctor did not state that he found, or that the defendant exhibited, any signs of injury other than to his neck; the doctor did testify that the appearance of the defendant was reasonably normal and that the defendant's vital signs were normal.

At the evidentiary hearing, the prosecution presented the testimony of four police officers who stated that the defendant was in good physical condition at the time of his arrest and that he had not been physically abused. Detective Campbell testified that the defendant appeared to be fine during their first meeting at the lockup. According to Campbell, however, the defendant had a severe cough, and was occasionally gagging and choking. When Campbell asked the defendant at the lockup about the cough, the defendant replied that he was dying of black lung disease. State's Attorney Grossi testified at the suppression hearing that the defendant appeared to be fine at the time of his confession, except for the persistent cough. The defendant did not testify at the hearing.

At the close of the evidence, the trial judge found the defendant's confession to have been voluntary and denied defendant's motion to suppress the incriminating statements.

At trial, the defense made a motion to reconsider its earlier motion to suppress, based upon the testimony of a recently discovered witness. The trial judge refused to reopen the motion to suppress but permitted the witness to testify at trial. The witness, whose sister was married to defendant's brother, claimed to have seen the police beat the defendant for a period of five minutes before putting him into the squadrol at the time of his arrest. The prosecution elicited from the police officers essentially the same testimony that had been presented at the suppression hearing. The defendant did not testify.

At the conclusion of the trial, the trial judge found the defendant guilty of aggravated arson, arson, and possession of an incendiary device. The judge had earlier directed a verdict for the defendant on an armed-violence charge. Concluding that arson was a lesser included offense of aggravated arson, the court then sentenced defendant to 15 years' imprisonment for the aggravated-arson conviction, and to a concurrent 3-year term for possession of the incendiary device. The convictions and sentences were affirmed by the appellate court in a Rule 23 order (87 Ill. 2d R. 23).

Defendant maintains that, in view of the severe injuries he had received before making his incriminating statement, the trial and appellate courts erred in refusing to suppress his statement.

Whether a statement is voluntarily given depends upon the totality of the circumstances. The test of voluntariness is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he confessed. (*People v. Prim* (1972), 53 Ill. 2d 62, 70.) The voluntariness of a confession, under ordinary circumstances, only needs to be established by a preponderance of the evidence. (*Lego v. Twomey* (1972), 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619; *People v. Jackson* (1968), 41 Ill. 2d 102, 109.) The trial court's finding that a statement was voluntary will not be disturbed unless the finding is contrary to the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 70.

In the present case, there is ample evidence in the record to support the trial judge's finding that the defendant made the statements voluntarily. Detective Campbell testified at trial that the defendant volunteered to tell Campbell about his participation in the crimes if Campbell would look for defendant's cross,

which was lost during the arrest. Later, without complaining of any coercion by the police, the defendant spoke openly with the State's Attorney about the events which led to his arrest. The State's Attorney testified that, except for the cough, the defendant appeared to be alert, coherent, and in good physical condition when he made his statements at the lockup. The defendant moved freely around his cell during the conversation, and did not complain of pain. The finding that the State proved by a preponderance of the evidence that defendant's statements were voluntary is not against the manifest weight of the evidence.

Defendant maintains that because his injuries were discovered while he was in police custody, the State must prove, not by a preponderance of the evidence, but by clear and convincing evidence, that the injuries were unrelated to the confession. A confession obtained by force or brutality is not voluntary and is inadmissible. (*Brown v. Mississippi* (1936), 297 U.S. 278, 80 L. Ed. 682, 56 S. Ct. 461; *People v. Cunningham* (1964), 30 Ill. 2d 433.) In *People v. La Frana* (1954), 4 Ill. 2d 261, 267, this court stated:

> "[W]here it is conceded, or clearly established, that the defendant received injuries while in police custody, and the only issue is how and why they were inflicted, we have held that something more than a mere denial by the police of coercion is required. Under such circumstances the burden of establishing that the injuries were not administered in order to obtain the confession, can be met only by clear and convincing testimony as to the manner of their occurrence."

See *People v. Davis* (1966), 35 Ill. 2d 202.

In the present case, unlike in *La Frana* and *Davis*, the evidence does not clearly establish that the defendant was injured while in police custody. Although symptoms of defendant's injuries were noticed while he was

in custody, the defense did not demonstrate when the injury occurred. Dr. Chivukula testified at the suppression hearing that the defendant told him at the hospital that he received his injury when he was beaten up and "kicked all over." Dr. Chivukula's testimony, however, does not reveal when the injury was inflicted, or by whom. The only fact established with respect to defendant's injury was that he had sustained a blunt trauma to his neck and chest. Dr. Chivukula testified that the defendant could have sustained the injury by falling against a blunt object.

While in custody, the defendant exhibited no visible signs of physical impairment. Although the defendant had small abrasions and contusions on his upper chest area when he was examined at the hospital, these marks, according to Dr. Chivukula, could only be seen if one looked closely while defendant had his shirt off. At the time of his arrest, defendant wore an army fatigue jacket which might have hidden the marks. Defendant's cough was the single external indication of his injury. When asked about the cough, however, defendant stated to Detective Campbell in one instance that he was dying of black lung disease, and on a separate occasion told the State's Attorney that he had lung cancer. Whether true or not, the defendant's responses to the questions asked by Campbell and the State's Attorney about the cough cast doubt on the defense's inferences that Clark was injured while in police custody.

Although the defense presented a witness who testified that she observed the police hitting the defendant before he was put into the squadrol, the trial judge discounted the testimony. The witness, who was indirectly related to the defendant, had been recently discovered, and the witness' testimony was contradicted by the testimony of several officers, who stated that the defendant was not beaten or abused in any way during his arrest.

The trial judge indicated that he would have had to stretch his imagination to believe the testimony of the defense witness, and from the record before us, we cannot dispute the trial judge's conclusion.

Because the defendant failed to establish that he was injured while in police custody, and because this point was not conceded by the State, we decline to require the prosecution to demonstrate by clear and convincing evidence under *La Frana* that the defendant's injury was wholly unrelated to his confession. The trial court in this case properly required the State to prove by a preponderance of the evidence that the defendant's confession was given voluntarily. *People v. Jackson* (1968), 41 Ill. 2d 102, 109.

Defendant contends that his conviction for aggravated arson must be reversed because the statute under which he was convicted, section 20—1.1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(1)), is unconstitutional. We agree. In *People v. Johnson* (1986), 114 Ill. 2d 69, this court held subsection (1) of section 20—1.1(a) unconstitutional. The present defendant's conviction for aggravated arson, therefore, arose under an invalid statute and must be reversed.

The trial judge merged the defendant's arson conviction into the defendant's conviction of aggravated arson for purposes of sentencing. Because, based upon the holding of this court in *Johnson*, the aggravated-arson conviction must be reversed, we remand the cause for sentencing on the arson conviction. We note in passing that the aggravated-arson statute has been amended by Public Act 84—1100, effective December 9, 1985. Because the defendant challenges the former version of the statute, which was in effect at the time of his offense and conviction, and not the present statute, the amendment does not affect the outcome of this case.

For the reasons stated, the judgments of the appel-

late and circuit courts are affirmed with respect to the defendant's conviction for arson and conviction and sentence for possession of an incendiary device; the judgments are reversed with respect to the defendant's conviction and sentence for aggravated arson; the cause is remanded to the circuit court of Cook County for sentencing on the arson conviction.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded, with directions.*