THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL PENA, Defendant-Appellant.

First District (3rd Division)   No. 87—0292

Opinion filed August 24, 1988.

Michael A. Johnson & Associates, of Chicago (Michael A. Johnson, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Gael M. O'Brien, and Jean T. McGuire Quinn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a trial without a jury, defendant Daniel Pena was convicted of murder, conspiracy to commit murder, and armed violence and was sentenced to an extended term of 50 years on the murder charge. Defendant appeals, contending that his confession was involuntary; that the State failed to prove him guilty beyond a reasonable doubt; and that the sentence was excessive.

On October 6, 1984, Angel Velez was standing on a street corner with several others when a brown car pulled up to the corner. Defendant was allegedly driving while Juan Perez was in the passenger seat. Perez rolled down the window and fatally shot Velez several times in the face and chest.

On January 22, 1986, defendant was arrested on an unrelated drug charge. He subsequently confessed to his participation in murdering Velez. At the hearing on defendant's pretrial motion to suppress the confession, police officers testified that defendant was brought to Area 5 headquarters in Chicago after the drug arrest.

Defendant testified that following his arrest Officers Guevara, McCarthy and Leonard questioned him. He was held in an interrogation room for five or six hours. Guevara repeatedly struck defendant in the face, ribs and on the legs from the groin to his knees with a flashlight. Officer McCarthy hit his face. This continued until the morning of January 23.

Defendant was taken to a holding cell, where he saw Amadoa Rivera, his brother-in-law's cousin, and Daniel Ramirez. Rivera testified that he saw defendant on the evening of January 22, prior to his arrest, and defendant did not appear to be hurt. At about 6 a.m. on January 23, in the holding cell, defendant's nose appeared bruised, red and swollen, and he had a lump on his forehead. Defendant told Rivera that the police had beat him. At about 8 a.m., the police removed defendant from the cell. After Rivera was moved at 10 a.m., he telephoned defendant's sister to report defendant's location.

After two hours, defendant was returned to the interrogation room. He testified that Guevara, Leonard and McCarthy continued to beat him in the face, ribs and legs. He urinated in his pants, and his nose and mouth were bleeding. A fourth man identified himself as a public defender and instructed defendant to agree to everything that was said. After two hours of being beaten, defendant stated he would cooperate.

In regard to his court-reported statement, defendant testified that he answered "yes" to each question after the "public defender" directed him to respond. Defendant only said what they told him to say. He denied answering "no" to the question of whether he gave the statement because of mistreatment. The court reporter wrote the wrong statements down. He denied that the lawyer taking the statement identified himself as an assistant State's Attorney, although the transcript indicated that identification.

Defendant's mother testified at the hearing that Rivera notified them that defendant was at Area 5 headquarters. The police, however, said defendant had been taken to a different station. A few moments later they saw defendant, 100 feet away, on the second-floor glass-enclosed gallery at Area 5 headquarters. Defendant limped, and his face was red and swollen.

Jamie Velez, defendant's brother-in-law, testified that he saw defendant at Area 5 headquarters. Defendant was about 100 feet away, behind glass. He limped, his face was swollen, and he looked hurt.

Officer Patrick McCarthy testified that he was working undercover and was with defendant when he was arrested on January 22 at about 11 p.m. Eight to ten officers surrounded the car. Defendant and McCarthy "were dragged out of the car and thrown on the trunk of the car and handcuffed." At the police station, McCarthy only stopped at the interrogation room for a moment, not entering the room, to let defendant know he was a police officer.

Officer Renaldo Guevara testified that on January 22 at 11 p.m. he acted as one of the back-ups for his partner, McCarthy, when defendant was stopped and arrested for the drug charge. Both McCarthy and defendant were dragged from the car. Defendant was then "thrown against the hood of the car to put the cuffs on him." Guevara testified that there was a struggle because they believed defendant had a gun.

McCarthy, Guevara and Officer John Leonard denied that anyone abused defendant. They agreed that the arrest report contained nothing indicating defendant resisted arrest. McCarthy and Guevara saw

no bruises on defendant, and Leonard noticed a slight scratch on his nose. The nose was not red or puffy, defendant did not complain of pain, did not limp, and did not have any noticeable bruises.

Richard Beuke, an assistant State's Attorney, testified that he spoke with defendant on January 24, 1986, at 1 p.m. Defendant had been involved with Beuke on a prior occasion and indicated he remembered Beuke. Defendant told Beuke that "when the arrest went down, he was trying to flee. One of the officers grabbed him, spun around, and he spun into the vehicle that they were in when they were arrested. I think either—I remember either the passenger door or the driver's door is what he told me he—his nose or his forehead had hit when he was arrested." Beuke observed a small cut on defendant's nose. Beuke asked defendant about the comment in his transcribed statement that officers had smacked him. Defendant told Beuke that he had lied to the court reporter to try to get out of the murder charge.

William Connelly, an assistant State's Attorney, testified that he interviewed defendant on January 23, 1986, at 6:30 p.m. He identified himself as an assistant State's Attorney, and not as a public defender. He observed a slight cut on defendant's nose. The arresting officers had told Connelly there had been a struggle at the time of the arrest.

The trial court denied the motion to suppress.

At trial, Officer Joseph Villareal testified that on October 6, 1984, at 11:15 p.m. he arrived at the scene and found the victim on the sidewalk with several gunshot wounds on his face and chest. Eyewitnesses told Villareal that a blue car and then a brown car drove past and someone in the brown car shot the victim.

Victor Velez testified for the State that at 11 p.m. on the night in question, he and the deceased plus two friends, were standing outside a reception hall following a wedding. The deceased and Victor were Spanish Cobras, and defendant and Juan Perez were Latin Kings, a rival gang. A blue car passed by and the occupants shouted "King Love." Several minutes later, a brown car approached from the same direction. The driver pulled up next to the pedestrians. Victor saw Perez roll down the window in the passenger side of the car. Perez stuck a shotgun out the window and shot the deceased in the face and chest three times. Victor gave the police Perez' identification four days later.

Ralph Realmo testified for the State that he was with defendant at the party on October 6, 1984. After 11 p.m., he left the party and saw defendant and Perez driving away.

Defendant's post-arrest written statement was admitted into evi-

dence at trial through the testimony of Connelly. Defendant stated he attended a party with other Latin Brothers and was accused of being disloyal to the gang. In order to prove his loyalty, defendant was to kill a Cobra. Defendant and Perez placed a shotgun under the front seat of defendant's brown car and drove to Cobra territory. Defendant saw the deceased and several others standing on a corner. The deceased made a gang signal. Defendant stopped the car, and Perez shot the deceased four or five times in the face. Defendant and Perez returned to the party. They cleaned the gun powder from the car.

Dr. Bruce Miller testified for defendant that he examined defendant at the Cook County jail at 1:50 a.m. on either January 25 or 26, 1986. There was a bruise on defendant's thigh, and the bruises were fairly recent. Defendant told Dr. Miller the bruises were the result of a police beating. Paramedics examined defendant before Dr. Miller. Their report was dated January 26, but made no note of any bruises.

Defendant first contends that the trial court erred in denying the motion to suppress his confession, which he maintains was the product of physical violence. Defendant argues that he was injured while in police custody and that his confession includes a claim of police brutality.

The State must prove by a preponderance of the evidence that a confession was voluntary where defendant raises the issue. (*People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123.) Where defendant was injured while in police custody, the State must show by clear and convincing evidence that the injuries were unrelated to the procurement of the statement. (*People v. Clark*, 114 Ill. 2d 450, 501 N.E.2d 123.) The court must view the totality of the circumstances in order to determine whether the statement was made freely, voluntarily, without compulsion, and that defendant's will had not been overcome. (*People v. Clark*, 114 Ill. 2d 450, 501 N.E.2d 123.) The trial court's finding on a motion to suppress will not be disturbed unless it is against the manifest weight of the evidence. *People v. Clark*, 114 Ill. 2d 450, 501 N.E.2d 123.

There was evidence here that defendant sustained the slight scratch on his nose and small bruise on his thigh at the time of the arrest on an unrelated charge. McCarthy and Guevara testified that at the time of the arrest McCarthy and defendant were dragged out and thrown against the hood of the car. Beuke testified that defendant confirmed that description of the arrest. And Connelly testified that the arresting officers informed him that there had been a struggle at the time of the arrest.

In addition, defendant's own statement corroborates this evidence

that he was injured at the time of his arrest on the unrelated drug charge. In the statement, defendant said he was "smacked" a few times when arrested. While he also made reference to being mistreated by one officer at the station, he then stated that the confession was not the result of that mistreatment. Notably, in a photograph taken immediately after giving the statement, defendant was smiling and looked uninjured.

The trial court could have found defendant's testimony incredible for several reasons. Defendant described the beatings as being continuous over a period of five hours the first time, and two hours the second time. He was repeatedly beat on the head, ribs and legs. The extent of the beatings as described by defendant was not corroborated by the medical evidence. Dr. Miller said the nose laceration was tiny and the leg bruise was merely tender. The paramedics' examination, which Dr. Miller stated always came before his own examination, did not indicate in the relevant part of the report that the examination had revealed any swelling or soreness.

The trial court must resolve conflicts in the evidence. (*People v. Ross* (1985), 132 Ill. App. 3d 553, 478 N.E.2d 27.) Here, the trial court's finding is supported by the evidence. The totality of circumstances shows that the statement was made voluntarily.

■ Defendant next contends that he was not proved guilty of murder beyond a reasonable doubt because the only evidence against him was the uncorroborated confession. (*People v. Neal* (1985), 111 Ill. 2d 180, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292.) Defendant concedes that the *corpus delicti,* or proof that a crime occurred, may be corroboration of a confession (*People v. White* (1984), 129 Ill. App. 3d 308, 472 N.E.2d 553), but argues that the murder here occurred one year before the arrest and the details were well known throughout the community.

In a murder case, the *corpus delicti* consists of the fact of the death and that the death was caused by the criminal agency of another. (*People v. Andersen* (1985), 134 Ill. App. 3d 80, 479 N.E.2d 1164.) Here, the fatal shooting was clearly caused by the criminal agency of another. The *corpus delicti* need not include the identity of the person who committed the crime. (*People v. Stanley* (1986), 146 Ill. App. 3d 912, 497 N.E.2d 496.) A confession tending to show defendant committed the crime, along with the proof of *corpus delicti,* is sufficient to justify the conviction. *People v. Sizemore* (1981), 97 Ill. App. 3d 1088, 423 N.E.2d 1264.

■ The details of defendant's confession corroborate the proof of the *corpus delicti.* Moreover, Victor Velez' testimony was consistent

with the details of defendant's confession. Further corroboration came from Realmo's testimony that he saw defendant and Perez driving in the direction of the murder scene at 11 p.m. on the night in question.

The circumstances related in the confession and the corroborating evidence were sufficient to prove defendant guilty beyond a reasonable doubt. (*People v. Donalson* (1977), 50 Ill. App. 3d 678, 365 N.E.2d 658.) The corroboration of the confession was not so improbable as to raise a reasonable doubt of defendant's guilt. *People v. Smylie* (1981), 103 Ill. App. 3d 679, 431 N.E.2d 1130.

■■ Defendant next contends that the 50-year sentence was excessive. He argues that the trial court improperly relied upon the fact that defendant planned the crime, an element of the conspiracy offense. In order to support an extended sentence, the exceptionally brutal or heinous behavior must accompany the offense within the most serious class of offenses for which defendant has been convicted. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) Here, the conspiracy element overlaps with the element of murder which requires the intent to kill, which can be shown by a prior plan. (*People v. Skiles* (1983), 115 Ill. App. 3d 816, 450 N.E.2d 1212.) The trial court is not required to ignore these circumstances, notwithstanding the fact that the same circumstances support an element of conspiracy. See *People v. Smallwood* (1984), 102 Ill. 2d 190, 464 N.E.2d 1049.

The trial court's determination of a sentence is within its discretion and will not be disturbed absent an abuse of that discretion. (*People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 483 N.E.2d 944.) Here, evidence in mitigation included that defendant was only 22 years old and that he had a four-year-old child. In addition, he had no prior convictions for violent crimes and was not the shooter. In aggravation, the State showed that defendant had two prior convictions for burglary. Moreover, the heinous nature of the crime was indicated by the cold-blooded shooting, at point-blank range with a shotgun, of a member of a rival gang arbitrarily chosen on the street.

The trial court noted that while defendant was not the shooter, "the nature of the act is such that the complicity of the driver is a strong one" because the murder was planned. The only motive for the murder was that defendant had been accused of being disloyal to his gang, and the murder was knowingly committed merely to prove his gang loyalty. "The lighted street, the circumstances of the victim and others standing in front of the hall or whatever it was, the car coming by slowly, again, with plenty of chance to back out, plenty of chances to do other things, but instead, the plan originally set in, some blocks away was carried forth, coldly and without any regard to the fact that

somebody standing on the street had a life ***." The court concluded that the crime was heinous and brutal. We find nothing in its reasoning to indicate the court abused its discretion, and thus we will not disturb the extended sentence imposed upon defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.