THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY HUBBARD, Defendant-Appellant.

First District (3rd Division)    No. 1—88—1601

Opinion filed November 27, 1991.

Randolph N. Stone, Public Defender, of Chicago (Kim L. Sorrells and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Howard D. Weisman, and Daniel P. Nikolic, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

On January 14, 1988, a jury found Jerry Hubbard guilty of murder and armed robbery. Judge Robert Boharic, on February 18, 1988, sentenced Hubbard to concurrent terms of 50 years for murder and 30 years for armed robbery. Defendant appeals from both the jury verdict and the sentence of the court. Defendant argues that the State failed to prove him guilty beyond all reasonable doubt. Even if proven guilty, the defendant believes his sentence was excessive.

Hubbard argues that his confession was improperly admitted and was not corroborated by independent evidence. In addition, defendant feels his sentence to be excessive because of the theory of accountability that the court used.

This court holds that the confession of the defendant was overwhelmingly supported by independent evidence; the State proved him guilty beyond a reasonable doubt. In addition, the trial court did not abuse its discretion in imposing an extended sentence.

We affirm.

On January 10, 1987, the victim, Willie Michael Reed, 24, a mentally handicapped male, went to the Popcorn Deli for his mother with $20 to buy a fish dinner and corned beef sandwiches.

Shortly thereafter, around 10 p.m., Reed was seen at 7400 Liquors by Jad Abraham, an employee. Abraham testified that he saw defendant Hubbard standing across the street from the store with two or three people while Willie Reed was in the store. The next day he identified codefendants Benjamin Dowdell and Herbert Barnes as two of the three other people. Although Abraham had never seen the defendant before, he was familiar with Barnes and Dowdell. He also testified that Hubbard, Dowdell and Herbert Barnes had left the store around 9:30 p.m. prior to Willie Reed's arrival.

The Popcorn Deli, located at 7340 South Racine, is less than a block from 7400 Liquors. Shortly after 10 p.m. on the evening of the crime, Leslie Brown, in his second-floor apartment over the deli, heard a car horn and looked out the window. Beneath the window he saw two young black males talking. One man was tall and the other short. He overheard the two men planning a robbery. The tall man told the short man they were going to "get him" because the person had some money. A third man stopped beneath the window, said something to the two men, then crossed over to the other side of Racine and motioned at the two men, pointing toward the deli. The other two men then walked north on Racine. Brown looked away from the window when he heard a bottle hit the street. When he looked out again, all three men were running. Brown positively identified the tall man and the man across the street in a police lineup the next day. He did not identify the short male.

Later that evening, Willie Reed arrived home and told his mother he had been beaten up for $10.09. Mrs. Reed testified that Willie's nose appeared displaced and his face was bloody. Paramedics arrived at 10:40 p.m. Paramedic Thomas Krajecki testified that he noticed a large lump on the victim's nose, bleeding from his nose and facial swelling. Once in the ambulance, the treating paramedic discovered a large stab wound in his back. Reed suffered a cardiac arrest en route to the hospital.

A post-mortem exam was performed by Dr. Yuksel Konacki, who observed a six-inch stab wound in the victim's back, which punctured the right lung. Dr. Konacki concluded that too much blood had drained into the chest cavity, resulting in death.

Although Dr. Konacki did not mention the nose injury in his written medical report, he testified that he noticed specks of blood about the victim's nose. He could not tell if the nose was swollen or just deformed. He did not internally examine the nose since post-mortem methods prevent disfigurement of the facial area.

Officer Thomas Ptak testified that on January 11, 1991, he arrested Udell Barnes and Herbert Barnes, brothers. He arrested Herbert Barnes at the apartment of his girl friend, Brenda Hines. After their arrest, Officers Anthony Downing and Homer Napier returned to the apartment of Brenda Hines in order to retrieve the jacket worn by Herbert Barnes the previous night. They asked Brenda Hines if she knew Hubbard. She said he was sitting on her couch and she pointed toward him. Hubbard stepped into the hallway and said he had been with Herbert Barnes and Dowdell the previous night. Hubbard was arrested and handcuffed in the hallway, then taken to the station.

Officer Ptak and Officer Terrence O'Connor conducted the investigation. On January 11 Herbert Barnes brought Officers Ptak and O'Connor to a vacant lot at 7336 South Racine to search for the murder weapon, but found nothing due to the snow. They returned to search the same lot on January 13 and found an eight-inch, white-handled butcher knife. There were reddish stains on the blade.

Officer Ptak and Officer Michael Duffin interviewed Hubbard at the station. Ptak testified that he read Hubbard his *Miranda* rights prior to questioning. He then told Hubbard that they were investigating a stabbing death in the area of 73rd and Racine. Hubbard said he knew nothing about it. After being told that Herbert Barnes and Dowdell were in custody, he said he was with Barnes and Dowdell the previous night and heard them planning to rob someone. When they finished talking, he and Barnes then began walking north on Racine, and Dowdell crossed the street. A man came out of the Popcorn Deli and Dowdell yelled "that's him." They followed the victim to the corner of 73rd Place and Racine, where Hubbard said he struck him in the face with a bottle. Herbert Barnes then stabbed him in the back, and Dowdell went through his pockets.

Assistant State's Attorney Kevin Durkin arrived at the station and read Hubbard his *Miranda* rights and told him he was a lawyer for the State. Hubbard then said he was with Barnes and Dowdell the previous night and that he knew they were planning to rob someone. He hit a man in the face with a bottle, but he did not recall who stabbed the man. He refused to sign a written statement.

Brenda Hines testified that on the evening of January 10 the defendant, Herbert Barnes and Udell Barnes and Dowdell were at her apartment. About 8 p.m., they left to buy cigarettes and beer. About 10:45 p.m., Herbert Barnes, Dowdell and Jerry Hubbard returned with beer, corned beef sandwiches and fish.

At trial, defendant testified he went to the store with Herbert Barnes and Dowdell to buy cigarettes and beer. While defendant purchased the items, Barnes called his brother and then stepped outside with Dowdell. When defendant left the store, he saw several men a few buildings away, near the Popcorn Deli. They appeared to be arguing, and he recognized them as Herbert Barnes and Udell Barnes and Dowdell. There was also another man whom he could not recognize. He saw a man fall to the ground and Herbert's hand went up and down, but he saw nothing in it. Herbert Barnes and the man were fighting. Defendant began to run when he saw Herbert Barnes running toward him.

He further testified that at the station he did not answer questions because he was unaware of what the officers were talking about. He was not read any *Miranda* warnings. Officer Duffin told him that if he would state he hit the victim with a bottle, he would ask the judge for a two-year sentence. He denied telling Assistant State's Attorney Durkin about hitting a man in the face with a bottle. On cross-examination he could not recall if he had testified differently on previous occasions in court. It was stipulated during trial that on two prior occasions defendant testified to the events differently.

A jury found the defendant guilty of armed robbery and murder. Judge Boharic sentenced the defendant to 30- and 50-year concurrent terms for armed robbery and murder, respectively. In imposing an extended term for murder, the judge commented on the heinousness of the crime, the brutality of the defendant's conduct and the need to deter others from committing the same type of premeditated crime.

The proper standard of review in examining whether a defendant has been convicted upon insufficient evidence is to determine whether the record evidence, considered in a light most favorable to the prosecution, could reasonably support a finding of guilt beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) A criminal conviction will not be set aside unless the evidence is so unreasonable, improbable or unsatisfactory that it justifies a reasonable doubt as to the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

At trial, the defendant's testimony contradicted his previous confessions. He stated that these confessions were coerced by Officer Duffin, who promised him a two-year sentence if he would say he hit a man in the face with a bottle. Defendant contends that the State failed to prove him guilty beyond a reasonable doubt on either count because the confessions were unsupported by the evidence. In support thereof, the defendant indicates: (1) the medical examiner did not no-

tice any injury to the victim's nose; and (2) no one actually saw the defendant hit the victim in the nose with a bottle.

Where a defendant raises the issue, the State must prove by a preponderance of the evidence that a confession was voluntary. (*People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123.) Whether a statement is voluntary depends upon the totality of the circumstances. The test is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time of the confession. (*Clark*, 114 Ill. 2d at 457.) The trial court's finding that a confession was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.) Both the trial testimony and the pretrial suppression hearing may be considered on appeal. *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.

■ At trial and during the pretrial suppression hearing, defendant testified that he was coerced by Officer Duffin, who allegedly promised him a two-year sentence in return for a statement about hitting a man in the face with a bottle. He did not make any other claims of physical or mental mistreatment or coercion. In addition, he did not claim that any of his other statements about the robbery and murder were coerced. Considering the totality of these things, we find that the trial court's finding that the confessions were voluntary was supported by the evidence.

In order to sustain a conviction based upon a confession, the confession must be corroborated. (*People v. Montes* (1989), 192 Ill. App. 3d 874, 549 N.E.2d 700.) In this State, the corroboration requirement is satisfied by proof of the *corpus delicti*. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861; *People v. White* (1984), 129 Ill. App. 3d 308, 472 N.E.2d 553.) In order to establish the *corpus delicti*, there must be some evidence apart from the confession demonstrating that a crime occurred. (*People v. Willingham* (1982), 89 Ill. 2d at 360, 432 N.E.2d at 864.) If the independent evidence *tends* to prove that an offense occurred, then such evidence, if corroborative of the facts contained in the confession, may be considered along with the confession to establish the *corpus delicti*. (*Willingham*, 89 Ill. 2d at 361.) In such event, the independent evidence need not establish beyond a reasonable doubt that an offense did occur. Once there is corroborating proof that a crime did in fact occur, no further reason exists for ignoring a confession when considering whether the *corpus delicti* is established. *People v. O'Neil* (1960), 18 Ill. 2d 461, 464, 165 N.E.2d 319.

■ Both the defendant and the State cite *Willingham* in support of their position. The State argues that under *Willingham* a confession will be upheld if the independent evidence *either*: (1) shows the existence of a crime or (2) corroborates the circumstances in the confession. Although we agree with the application of *Willingham* to the case at bar, we disagree with the State's interpretation of the *Willingham* decision. In order to satisfy the corroboration requirement, the independent evidence must meet *both* prongs.

The court in *Willingham* (quoting *People v. Perfecto* (1962), 26 Ill. 2d 228, 229, 186 N.E.2d 258) stated:

> " ' "The true rule is that if there is evidence of corroborating circumstances which tend to prove the *corpus delicti and* correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. [Citation.] The same evidence may be used to prove both the existence of the crime and the guilt of the defendant, the test being whether the whole evidence proves the facts that a crime was committed and that the accused committed it. [Citation.]" [Citation.]' " (Emphasis in original.) *Willingham*, 89 Ill. 2d at 359-60.

Section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)) provides:

> "A person commits armed robbery when he [takes property from the person or presence of another by the use of force or by threatening the imminent use of force while] armed with a dangerous weapon."

The evidence presented tends to prove that an armed robbery did in fact occur. Brown testified that he saw and heard two black males outside his apartment window, planning a robbery in the vicinity of the store where the victim was seen. A third man talked with the other two, then crossed the street and pointed toward the Popcorn Deli. Brown then looked away from his window and heard a bottle break. When he looked out again all three men were running. Shortly thereafter, the victim returned home to his mother and said, "Mama, they beat me up for ten dollars and nine cents." In addition, Brenda Hines stated that the defendant returned to her apartment shortly after the robbery with the codefendants, and they ate the fish and corned beef sandwiches which they brought home with them. The victim had been sent out to pick up fish and corned beef sandwiches. This evidence tends to prove the existence of a robbery as well as the use of force to effect the robbery.

When the victim arrived home, his mother as well as the paramedics noticed a large lump on the victim's nose and bleeding from the nose. The paramedics were not aware of any other injury until they removed the victim's shirt en route to the hospital. They then discovered a six-inch stab wound in his back. A post-mortem examination revealed that the stab wound had punctured the victim's right lung, permitting too much blood to drain into the chest cavity and as a result death occurred.

This evidence also tends to prove the *corpus delicti* of a murder. In a murder case, the *corpus delicti* consists of the fact of death and that the death was caused by the criminal act of another. This need not include the identity of the person who committed the act. (*People v. Pena* (1988), 174 Ill. App. 3d 281, 528 N.E.2d 325.) The proof of the *corpus delicti*, along with the confession tending to show that the defendant committed the crime, is sufficient to justify conviction. 174 Ill. App. 3d at 286, 528 N.E.2d at 329.

The evidence presented clearly suggests that two crimes have occurred, namely, armed robbery and murder. Moreover, this same evidence corroborates the confessions of the defendant. The defendant confessed that he was with the two codefendants, Herbert Barnes and Dowdell, the evening before when they discussed robbing someone. He then began walking north on Racine toward the Popcorn Deli with Herbert Barnes when Dowdell crossed over the street. Defendant hit a man in the face with a bottle, Herbert Barnes stabbed him in the back and Dowdell went through his pockets.

Defendant says that this confession is unsupported by the evidence since the post-mortem report of Dr. Konacki did not mention any nose injury. This argument is meritless. Dr. Konacki testified that he recalls specks of blood beneath the victim's nose. He could not internally examine the nose since post-mortem procedures prevent disfigurement of the facial area. He also stated that he was not certain if the victim's nose was swollen or just deformed. Thus, the absence of a nose injury in the written medical report was not conclusive as to whether or not the nose was actually injured. Moreover, the victim's mother as well as the treating paramedics testified that the victim's nose was swollen and bleeding.

The independent evidence presented shows that both of the crimes occurred. This same evidence corroborated the confessions of the defendant. The *corpus delicti* was established and the confessions were properly admitted into evidence. We believe the State proved the defendant guilty beyond a reasonable doubt.

■ Defendant also contends that notwithstanding the verdict of the jury, the sentence imposed by the trial court was excessive and requests that the case be remanded for a new sentencing hearing. Because we find that the trial court properly considered the heinousness and brutal nature of this crime, we deny defendant's request for a new hearing.

The standard of review in deciding whether a sentence is excessive is whether the trial court abused its discretion. (*People v. Robinson* (1980), 83 Ill. 2d 424, 415 N.E.2d 1045.) The Unified Code of Corrections grants a broad discretion in sentencing judges in order to get reasoned judgments as to the appropriate penalty for a particular case. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) The trial court is normally the proper forum in which a suitable sentence is determined, and the trial court's decisions in this regard are entitled to great deference and weight. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

The defendant was sentenced to concurrent terms of 30 and 50 years for armed robbery and murder, respectively. This sentence is identical to the one received by codefendant Herbert Barnes, who stabbed the victim. Codefendant Dowdell, who went through the victim's pockets, received 25 years. Defendant argues that since his guilt was premised on a theory of accountability, he should not have received the same sentence as the principal, codefendant Herbert Barnes.

Armed robbery is a Class X felony. (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(b).) The sentence for a Class X felony is not less than six years and not greater than 30 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) Thus, a sentence of 30 years for armed robbery was within the statutory limits.

The State incorrectly cites the sentencing provisions for murder as being between 20 and 60 years. This provision did not become effective until January 1, 1988. The crime occurred in January of 1987, at which time the sentence for murder was not less than 20 years and not more than 40 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(1).) Since the judge imposed a sentence of 50 years, this was an extended-term sentence, governed by the provisions of section 5—8—2. This section states that where aggravating factors set forth in paragraph (b) of section 5—5—3.2 are present, the trial judge may give a more severe sentence. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2.) The "aggravating factors" include whether the crime is exceptionally brutal or heinous and whether the victim is physically handicapped. "Physically handicapped" includes persons with some physical charac-

teristic which impairs their ability to avoid or prevent the commission of the crime. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b).

Willie Michael Reed was a mentally handicapped young man, viciously murdered by his neighbors for a meal and $10. When he returned home to his mother, he was not even aware that he had been stabbed in the back. The trial judge properly considered these factors in imposing an extended sentence for murder.

The armed robbery sentence imposed by the trial judge was properly within the statutory limits. In imposing an extended-term murder sentence, the trial judge considered the brutality and heinousness of the crime as well as the need to deter others from committing the same crime. Accordingly, we affirm the sentence of the trial court.

Affirmed.

CERDA, P.J., and GREIMAN, J., concur.