THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY SHELTON, Defendant-Appellant.

First District (3rd Division)    No. 1—89—2429

Opinion filed June 2, 1993.

GREIMAN, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Michael Falagario, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

On September 8, 1988, Hiram Booker was shot and killed at a dope house on the west side of Chicago. Following a jury trial, defendant Gregory Shelton was found guilty of first degree murder and sentenced to 20 years' imprisonment. On appeal, defendant asserts the following: (1) the State failed to prove defendant guilty beyond a reasonable doubt; (2) the judge erred in allowing the State to impeach defendant with proof of a prior conviction; and (3) the defendant's tendered jury instructions were improperly rejected by the trial court.

The basic facts of this case are that the victim, Hiram Booker, also known as "Junebug," was slain on September 8, 1988. Booker's sister, Betty, reported to the police that defendant Shelton was having some trouble with her brother. According to Betty, her brother was having problems with two persons who worked at the dope house where her brother was shot. The two men were Shelton, known as "Twin," and Albert Calvin, known as "Fat Al." Shelton later admitted that he normally worked in the drug house, located at 3009 West Madison Street in Chicago, from 6 p.m. until midnight, when he was relieved by Calvin. On the night of the shooting, another friend, Ricky Price, worked with Calvin after midnight.

The police took Betty on a tour to search for the assailants. After Betty identified Shelton, Calvin and Price from the squad car of police officer Ralph Vucko, Vucko asked Shelton and the other two men to accompany him to the police station to be questioned in connection with the shooting investigation of Booker.

Subsequently, Shelton was placed in an interview room and read his rights. Officer Vucko then departed from the room in order to question Calvin and Price. An attorney by the name of Bruce Wexler arrived at the police station several hours later and interviewed Calvin and Price. The police were never informed that Wexler was representing Shelton. According to Shelton, he was retained in the interview room, but was not told he was free to leave the police station.

Shelton was picked up at 11 a.m. on the morning of September 8, 1988, and was still at the police station at 1 a.m. on September 9, after talking with Vucko several times. Finally, some 13 hours later, and after being informed of his constitutional rights, defendant began to provide information about the murder to Detectives Vucko and Kriston Kato. This brief interview lasted about a half hour. Shelton admitted to a confrontation with Booker the day before the murder, wherein Booker allegedly threatened Shelton with a bottle. Shelton then stated that someone named Keno was involved with this murder. Eventually, Vucko decided there was no such person.

Price later disclosed that Shelton had told him that the victim had been shot twice in the head. Officer Vucko then confronted defendant about his prior comment to Price. Defendant responded that someone in the neighborhood had told him about the manner of the victim's death. Vucko also discussed with defendant various discrepancies in his story. There was some discussion about who relieved whom at the location or scene of the homicide, which was a drug dealing operation. It was also unclear as to whether Shelton had been replaced by Price and Calvin about 6 p.m. on September 8.

Shelton told Vucko that Keno had arrived at the scene at about midnight. Vucko then told defendant to tell the truth and, subsequently, Shelton gave a statement different from his earlier one. This took place at about 8 a.m. on September 9. At that point, Officer Vucko considered Shelton under arrest.

Assistant State's Attorney Mary Beth Kinnerk arrived at the police station on September 9 to interview Shelton. In the presence of a court reporter, Shelton said he had no complaints about the police or his treatment while in custody. Defendant never requested an attorney. Defendant then admitted to shooting Booker. According to Shelton, Booker was beating on the back door of the dope house where he was working. Shelton then climbed out of the skylight and approached Booker from behind. Booker then grabbed Shelton, who pulled a handgun from his own pocket, and "three or four shots went off."

At trial, defendant testified he was at the murder scene one day prior to the murder, but that he was installing dry wall and not dealing drugs. He further testified that his prior written statement was coerced by Officer Vucko, who allegedly slapped defendant in the head with his open hand. Detective Kato then told defendant to stand up, whereupon Kato kicked defendant in the groin with his left foot. Defendant then folded down on the floor and was told to get up or he would be "stomped." Upon standing, Vucko slammed defendant's head into a wall. The door to the room was closed and no one else was present. The following day, Vucko promised defendant the beating would stop if he confessed to the murder of Booker. Apparently, Vucko and Kato became hostile after learning from Price that Shelton had told Price the victim had been shot twice in the head. Kato said Price and Calvin were being truthful and that defendant Shelton would make it easier on himself if he told the truth.

The next day, on September 9, Vucko indicated the police would stop the punishment if defendant Shelton told his story. Vucko told defendant that this would be easier on him since the officers could get a friendly State's Attorney and a statement would appear as if Shelton had not meant it. Shelton opposed this because this would be admitting guilt, but Vucko told defendant he would be blamed anyway, based on the account of Calvin and Price that Shelton was last seen with the victim. Vucko said that Shelton might as well confess. Shelton finally complied and indicated that he did not do so voluntarily. Shelton claims he asked Detective Kato to call the attorney by the name of Wexler to discuss the matter, but Wexler was never called.

The first issue we must address is whether the State proved defendant guilty beyond a reasonable doubt. Defendant contends that the only evidence presented by the State was his confession, which he claims was coerced. No direct or physical evidence was presented linking defendant to the murder in question.

The proper standard of review in examining whether a defendant has been convicted upon insufficient evidence is to determine whether the record evidence, considered in a light most favorable to the prosecution, could reasonably support a finding of guilt beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) A criminal conviction will not be set aside unless the evidence is so unreasonable, improbable or unsatisfactory that it justifies a reasonable doubt as to the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

At trial, defendant's testimony contradicted his previous confessions. Defendant proceeded on the theory that these confessions were coerced by Officers Vucko and Kato, who allegedly beat defendant until he confessed.

Where a defendant raises the issue, the State must prove by a preponderance of the evidence that a confession was voluntary. (*People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123.) Whether a statement is voluntary depends upon the totality of the circumstances. The test is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time of the confession. (*Clark*, 114 Ill. 2d at 457, 501 N.E.2d at 126.) The trial court's finding that a confession was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) Both the trial testimony and the pretrial suppression hearing may be considered on appeal. *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.

■ At trial and during the pretrial suppression hearing, defendant testified that he was locked in an interrogation room, was not fed and not allowed to use the washroom. He stated he was later beaten by Officers Vucko and Kato, but did not tell Assistant State's Attorney Kinnerk about the beating for fear of the officers. Shelton testified that before he called Kinnerk, Officer Kato warned him that if he mentioned the beatings to her, they would begin again until he confessed. Both Officers Vucko and Kato denied ever striking defendant and further testified that defendant never requested to speak to an attorney, was allowed to freely use the washroom, and Kato stated that he personally brought food to defendant. Assistant State's Attorney Kinnerk testified that while alone with defendant he told her he had no complaints with the police.

The trial court had the opportunity to weigh and analyze the credibility of all who testified. Based upon the testimony presented, we cannot find that the decision of the trial court to admit defendant's confession was against the manifest weight of the evidence.

We next consider whether the confession was sufficient to support defendant's conviction. In order to sustain a conviction based upon a confession, the confession must be corroborated. (*People v. Montes* (1989), 192 Ill. App. 3d 874, 549 N.E.2d 700.) A confession will be upheld where the independent evidence: (1) shows the existence of a crime and (2) corroborates the circumstances in the confession. *People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861; *People v. Hubbard* (1991), 222 Ill. App. 3d 605, 584 N.E.2d 285; *People v. White* (1984), 129 Ill. App. 3d 308, 472 N.E.2d 553.

In this case, the victim's sister, Betty Booker, identified defendant as one of the men with whom her brother was having trouble. Defendant confessed that he climbed through a skylight and shot the victim several times. The medical examiner testified that the victim died of multiple gunshot wounds. Officer Kato testified that following defendant's confession, police detectives verified defendant's explanation of his escape route. The defense argues on appeal that the confessions are incredible since the State never proved whether it was humanly possible to scale a wall and climb through the skylight in order to shoot the victim. Moreover, the police never confirmed the defendant's claim that the skylight was "broken." Defendant's brother, Broderick Shelton, also testified that on the night of the murder defendant arrived at his home before midnight and remained there until the next morning around 11 a.m. The murder occurred sometime after midnight.

■ Although there are conflicting accounts of what actually occurred, the jury in this case had the opportunity to weigh the credibility of the witnesses and determine whether or not defendant's confession was reliable and voluntary. After viewing the evidence in a light most favorable to the State, we find that the trier of fact could have found defendant guilty beyond a reasonable doubt of the murder of Hiram Booker. While this is a close case, there was no evidence of physical abuse other than minor medical treatment from a paramedic and defendant did not make a statement about the physical abuse, either to the assistant State's Attorney or the judge, when he was initially arraigned. Nevertheless, one of the tragic misfortunes in our society is that there is often little physical evidence of police brutality and the accused, ignorant of their legal rights, do not have the wherewithal to speak out in the midst of their entanglement with the law enforcement process.

We next consider whether the prior conviction of defendant was improperly admitted into evidence. At trial, defense counsel moved to bar the State's use of a prior conviction to impeach defendant's testimony. Over defense counsel's objection, the State stipulated to the jury that defendant was convicted of armed robbery in 1970. Although the conviction was approximately 20 years old, defendant was released from confinement within a 10-year period.

■ Trial courts are vested with discretionary authority in admitting evidence of prior convictions, within certain guidelines. (*People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895; *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.) Factors to be considered by the trial court are: (1) the nature of the crime; (2) the remoteness of the witness' release from confinement; (3) the subsequent career of the person; (4) whether the crime was similar to the one charged (where the crimes are similar the chance of prejudice may be greater); (5) the extent to which it is more important for the jury to know the truth rather than about the prior conviction; and (6) whether the witness' testimony is a "central issue" to the jury's findings. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, superseded by statute as stated in *People v. McClendon* (1986), 146 Ill. App. 3d 1004, 497 N.E.2d 849.) However, a conviction should not be admitted where its prejudicial effect substantially outweighs its probative value. *People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.

In deciding to admit defendant's prior armed robbery conviction, the trial court considered: (1) that the jury was initially informed that defendant had never been arrested or convicted of a drug offense; (2) evidence that the victim was an alcoholic, was using drugs and had robbed someone on the day of his death; (3) that the other suspects in the case, Price and Calvin, had prior convictions and "were no angels"; and (4) that defendant was released within the 10-year time limit for admitting a conviction into evidence. The trial court also commented that "the credibility of the defendant, as everyone else in this case who has testified, is clearly an issue that the jury is going to have to decide."

Based upon the findings of the trial court, it appears as though the court took into consideration several irrelevant factors. First, the trial court improperly considered the bad character of *the victim* in this case in admitting defendant's prior conviction. Are we to surmise that defendant's conviction would have been inadmissible had the victim been of flawless character? Secondly, the prior convictions of the other suspects in the case are not relevant to the admission of defendant's prior conviction. However, the court properly took note

of defendant's present connection with the illegal narcotics industry as well as the fact that the prior crime was not similar to the crime of murder.

In deciding whether or not the trial court abused its discretion in admitting a prior conviction, our ultimate inquiry inevitably focuses upon the totality of the evidence presented and the likelihood that, absent the admission of the conviction, the trial court would have reached the identical result. Although this is a close case, based largely upon circumstantial evidence, the jury was given the opportunity to weigh the testimony of defendant against that of the arresting officers. As in many cases, the verdict hinged upon witness credibility.

Based upon the factors considered by the trial court, as well as the totality of the circumstances in this case, we find that the trial court did not abuse its discretion in admitting the prior conviction of defendant into evidence at trial. Moreover, we cannot conclude that absent the admission of the prior conviction, the result in this case would have changed.

■ Defendant's final argument on appeal is whether the trial court improperly refused to accept defendant's non-Illinois Pattern Jury Instructions (hereinafter IPI). As a general rule of practice, IPI instructions are preferred over non-IPI instructions by Illinois courts. (*People v. Brooks* (1989), 185 Ill. App. 3d 935, 542 N.E.2d 64.) Thus, the sound discretion of the court is required whenever a decision to utilize non-IPI instructions is presented.

The specific issue before this court is whether the jury was properly instructed as to defendant's theory of the case. If the evidence in support of the conviction is so clear and convincing that the jury's verdict would not have been different, any errors in refusing non-IPI instructions or even IPI instructions would not justify a reversal. (See *People v. Austin* (1989), 133 Ill. 2d 118, 549 N.E.2d 331.) In this case, defense counsel presented a non-IPI instruction regarding coerced confessions as well as a non-IPI instruction regarding the failure of the State to call certain prosecution witnesses. However, the jury heard several IPI instructions which adequately covered these areas.

The trial court may correctly decline a non-IPI instruction when an IPI instruction is presented which adequately addresses a similar issue. Because the IPI instructions presented to the jury adequately covered the same issues presented in the non-IPI instructions, the refusal to admit the non-IPI instructions was within the sound discretion of the trial court.

For all of the foregoing reasons, the decision of the circuit court of Cook County is hereby affirmed in all respects.

Affirmed.

RIZZI, J., concurs.

JUSTICE GREIMAN, dissenting:

I disagree with the majority's evaluation of the impact of the admission of defendant's prior conviction by way of impeachment. While courts are vested, subject to certain parameters, with discretion in admitting evidence of prior convictions, that authority must not be exercised where its prejudicial effect outweighs its probative value. *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; *People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.

*Montgomery* and its progeny have set the guidelines for admission of such evidence, and when a trial court goes beyond those guidelines, we must be willing to reverse a conviction to ensure defendant a fair trial.

We are hesitant to use such impeaching material, not because it lacks probity, but rather, because it is too probative!

Evidence of a conviction cannot be used to impeach a witness if a period of more than 10 years has passed since the date of conviction or release of the witness from confinement, whichever is later. (*People v. Lawler* (1991), 142 Ill. 2d 548, 563, 568 N.E.2d 895.) Defendant's conviction was nearly 20 years old and he was released from jail after 9 years and 9 months, just short of the 10-year period mandated by *Lawler* and *Montgomery*.

*Medreno* sets out seven factors for the trial court to weigh in determining whether to allow the impeachment:

"(1) whether the prior conviction is veracity-related;

(2) the recency of the prior conviction as it reflects the degree of the rehabilitation in witness' credibility;

(3) whether the witness' age and circumstances at the time of his prior conviction diminish or mitigate the conviction's probative value;

(4) whether the prior conviction is affected by the witness' subsequent career and length of criminal record;

(5) whether the prior offense is similar to the instant offense thus increasing the danger of prejudice;

(6) the need for the witness' testimony and the likelihood he would forego his chance to testify thus impeding the trier of fact's disposition of the charges in accordance with the truth; and

(7) whether the witness' credibility is a central issue to the determination of the truth." *Medreno*, 99 Ill. App. 3d at 452.

While the conviction which we now consider may meet some of the *Medreno* criteria for admission, it is very remote in time, without evidence of defedant's age or circumstances at the time of conviction, or defendant's career or criminal record and his credibility is the central issue to the determination of the truth in the case at bar. Moreover, the prior offense was dissimilar from the offense upon which the conviction is based.

The majority notes that the trial court employed "several irrelevant factors" in making its decision. The trial court examined the character of the victim and prior convictions of other suspects in the case in an apparent effort to bring all of the parties down to the lowest common denominator. The majority has made a first-rate analysis of the facts, the trial court's consideration of improper factors, and the governing law, but at the last moment speculates that the result would not have varied even if the prior conviction had not been brought to the jury's attention.

We often make that speculation in considering harmless error; however, we refrain from such speculation where we are faced with a close case. The majority acknowledges that the evidence is close. Conviction rests upon a confession which has only the slightest corroboration and which defendant maintains was violently extracted from him.

If this is a close case as the majority would have us believe, it is difficult to imagine that the imprudently admitted prior conviction would not be a factor which might tip the scale of justice in favor of the State.

Accordingly, I would reverse and remand for a new trial.