THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH HORNSBY, Defendant-Appellant.

First District (3rd Division)    No. 1—94—2890

Opinion filed December 27, 1995.

Rita A. Fry, Public Defender, of Chicago (Ira S. Sheffey, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Ross M. Eagle, and Ricky Granderson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a bench trial, defendant, Joseph Hornsby, was convicted of first-degree murder in violation of section 9—1(a) of the Criminal Code of 1961 (720 ILCS 5/9—1(a) (West 1992)) and sentenced to a term of 40 years' imprisonment for that crime. It is from the judgment of conviction that defendant now appeals to this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm and remand with directions.

## FACTUAL BACKGROUND

Defendant's conviction arose from the killing of Nelson Torres in a drive-by shooting on June 24, 1992, near 2817 North Kedzie Avenue in Chicago. At a hearing on the motion to suppress, defendant's sister, Debbie Hornsby (hereinafter Debbie), testified that at 8 a.m. on June 25, 1992, two police officers came to the home she shared with defendant and asked to speak with him because his license plates were identified by a witness to a shooting. Defendant spoke with the officers, then went to the police station with them.

Debbie testified that defendant was a diabetic and needed to maintain a proper diet and take one insulin shot each morning. Debbie recalled that defendant had his shot as scheduled before he left for the police station. Just prior to midnight, Debbie went to the police station with a bag containing insulin for the shot defendant would need the next morning. Debbie was allowed to speak with defendant in an interview room and testified that he was pale and shaking and did not understand her questions.

Defendant testified that he required two insulin shots each day, one at 6 a.m. and the other between 4 p.m. and 5 p.m. On the morning of June 25, 1992, he accompanied the officers to the police station where he was placed in a locked room and questioned. The officers left him alone in the room after he denied involvement in the shooting. Approximately four hours after he arrived at the station, defendant told them that he was a diabetic and needed something to eat because his blood sugar was low and he was going into insulin shock. According to defendant, Detective William Johnston said that defendant would not get anything to eat until "they got something," and the officers left. At some point, an unidentified officer pushed defendant in the chest and told him he would receive all of the blame for the murder and would not get his medication the next day if he did not make a statement. Defendant testified that after his requests for food and medication were repeatedly denied, he answered their questions and made the statements that formed the basis of his motion to suppress. Defendant admitted on cross-examination that at the time he made the statements, it was not yet time for his second insulin shot. Defendant also testified that sometime after making the statement, he was given a hot dog, french fries and a soft drink.

Defendant testified that later that evening, he spoke to Assistant State's Attorney John Dillon and signed a form consenting to a search of his house. Defendant also gave a written statement at 1 a.m. on

June 26, 1992, detailing his involvement in the shooting. According to defendant, Dillon did not advise him of his constitutional rights until after he made the statement, and he did not tell Dillon of the mistreatment by police because he was afraid. Defendant testified that he never received his second insulin injection on June 25, but was taken to a hospital for his morning injection on June 26.

The parties stipulated that an emergency room physician at Our Lady of the Resurrection Hospital would testify that he gave defendant an insulin injection at 6:38 a.m. on June 26, 1992, and that defendant's color was good at that time and his skin was warm and dry. Defendant was discharged 10 minutes later in good condition. The parties further stipulated that a nurse from Cook County Hospital would testify that at 8:30 p.m. on June 27, 1992, defendant was transferred there from Cermak Hospital for the treatment of uncontrollable diabetes. Another stipulation established that from June 28, 1992, through July 7, 1992, defendant received one insulin shot each morning at Cermak Hospital and did not receive a second injection on any of those days.

Detective Stephen Gawrs testified that he, Detective William Johnston and Sergeant Edmengy went to defendant's house at 10 a.m. on June 25, 1992. Defendant denied involvement in the shooting and agreed to accompany the officers to the police station. After being advised of his *Miranda* rights, defendant made a statement implicating himself and others. Gawrs and the other officers then left defendant in the interview room while they continued their investigation. Gawrs testified that, prior to making the statement, defendant did not mention having diabetes or needing food or medication. At approximately 1 p.m., defendant was given a cheeseburger and soft drink. Defendant was also given cigarettes and water and allowed to use the bathroom. Defendant looked fine and did not complain that he was feeling ill or that he had needs that were not being met.

Gawrs further testified that Dillon arrived at the police station at 7 p.m. that evening and obtained defendant's consent to a search of his house. At approximately 11 p.m., Debbie came to the station with a bag of medical utensils. Gawrs stated that the bag was given to another officer for safekeeping because injections had to be administered at a hospital. Gawrs did not see anyone strike defendant.

Dillon testified that after he gave defendant the *Miranda* warnings, defendant signed a consent-to-search form. Dillon then waited for the search to be completed before taking a written statement. At approximately 8:30 p.m., one of the detectives brought food for everyone, including defendant. Dillon testified that defendant's physical condition appeared normal and defendant told Dillon that he

had no complaints about his treatment at the police station. Prior to the written statement, Debbie told Dillon that defendant was a diabetic and had received his injection that morning. She brought insulin for the shot defendant would need the following day. At approximately 1 a.m., Dillon again gave defendant the *Miranda* warnings, after which he gave a written statement. Defendant's responses to questions were coherent and appropriate, and he did not indicate that he needed medical attention. Defendant then made corrections to the statement and signed it.

Johnston testified that defendant was given food at 1 p.m. and that he appeared to be in good physical condition. During the search of defendant's house, his sister told Johnston that defendant needed one insulin injection every day and that he had already received his injection for that day. Johnston told Debbie that he would arrange for defendant to receive his injection for the following day. Debbie was allowed to visit with defendant in an interview room that evening and did not complain about his treatment or physical condition.

At the conclusion of the hearing, the trial court denied the motion to suppress, finding that defendant's statement was voluntary and that his testimony at the hearing was replete with inconsistencies and lies.

## ISSUES PRESENTED FOR REVIEW

Defendant argues on appeal that: (1) the trial court erred in denying his motion to suppress statements because the police coerced him into making the statements; and (2) the mittimus is incorrect and must be corrected to conform to the trial court's judgment.

## OPINION

Defendant initially urges that the trial court's denial of the motion to suppress was manifestly erroneous because the evidence established that he was not allowed to take his regularly scheduled insulin shot and was in the throes of an insulin reaction caused by an imbalanced diet when he made his statement. Defendant also contends that the evidence showed that he was beaten while in custody. We disagree.

The State must prove the voluntariness of a statement by a preponderance of the evidence. (*People v. Clark* (1986), 114 Ill. 2d 450, 457, 501 N.E.2d 123.) The test of voluntariness is whether the defendant made the statement freely, voluntarily and without compulsion or inducement, or whether his will was overborne at the time he confessed. (*Clark*, 114 Ill. 2d at 457.) The trial court has the opportunity to observe the witnesses and assess their demeanor as they

testify and is therefore in a better position than a court of review to determine credibility and resolve conflicts in the testimony. (*People v. Tanser* (1979), 75 Ill. App. 3d 482, 487, 394 N.E.2d 616.) A trial court's finding that a statement was voluntary will not be overturned by this court unless it is against the manifest weight of the evidence. *Clark,* 114 Ill. 2d at 457.

■ In the case *sub judice,* the trial court's finding of voluntariness was not against the manifest weight of the evidence. Although defendant was a diabetic, the evidence showed that he received his regularly scheduled insulin injection before he was taken to the police station on the morning of June 25, 1992. According to the officers' testimony, defendant made an inculpatory statement shortly after arriving at the station and was given food at approximately 1 p.m. and again at 8:30 p.m. The police officers and Dillon testified that defendant appeared to be in good condition and did not request medical attention. Defendant gave a written statement at 1 a.m. on June 26, 1992, and was taken to the hospital for an insulin shot at 6 a.m. The stipulated testimony of the physician who administered the shot was that defendant's color was good and his skin was warm and dry. Defendant was discharged in good condition 10 minutes after receiving the injection. Defendant was the only witness who testified that he needed two injections each day rather than one. In fact, defendant's testimony on this point was contradicted by that of his sister. Also, stipulated testimony showed that while defendant was held in custody, he received one insulin shot each morning at Cermak Hospital. Thus, there was ample evidence to support the trial court's determination that the police did not deny defendant food or medical treatment as a means of coercing his statement.

The case primarily relied upon by defendant to support this contention, *People v. Banks* (1989), 192 Ill. App. 3d 986, 549 N.E.2d 766, is easily distinguishable from the instant case. In *Banks,* it was undisputed that the defendant suffered several injuries in police custody that were consistent with his claim of physical abuse. The *Banks* court held that, under those circumstances, a mere denial by the officers that they inflicted the injuries as a means of coercing a statement was insufficient to meet the State's burden of voluntariness. (*Banks,* 192 Ill. App. 3d at 992.) In the case at bar, the medical evidence did not support defendant's claim that he was suffering from a lack of food or medication when he made his statement.

■ Still to be considered is defendant's assertion that his mittimus is incorrect. The State concedes this point to defendant and we agree. The mittimus erroneously shows that defendant was convicted of two counts of first-degree murder and unlawful use of a weapon by

a felon. In fact, defendant was found not guilty of the weapons charge and was convicted of only one count of first-degree murder. Pursuant to Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), we remand this case to the circuit court of Cook County and direct it to correct the mittimus to reflect that defendant was convicted of one count of first-degree murder. See *People v. McCray* (1995), 273 Ill. App. 3d 396, 403, 653 N.E.2d 25.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed and remanded with directions.

Judgment affirmed and remanded with directions.

RIZZI and CERDA, JJ., concur.